VANCE TRUCKING COMPANY, Inc.,
and Allstate Insurance Company,
Plaintiffs,

v.

CANAL INSURANCE COMPANY, Forrester Trucking Company, Inc., Herbert
Francis Carson, Scott Carson, Susan
Carson, David Carson, Christopher Carson, and Robert H. Carson, Administrator of the Estate of Annie Barbara Carson, Deceased, Defendants.

Civ. A. No. 4364.

United States District Court
D. South Carolina,
Greenville Division.

March 9, 1966.

See also D.C., 249 F.Supp. 33.

W. Francis Marion and O. G. Calhoun,
Jr., of Haynsworth, Perry, Bryant,
Marion & Johnstone, Greenville, S. C., for
plaintiffs.

Wesley M. Walker and O. Doyle Martin,
of Leatherwood, Walker, Todd & Mann,
Greenville, S. C., for defendants Canal
Ins. Co. and Forrester Trucking Co., Inc.

David L. Freeman, and C. T. Wyche,
of Wyche, Burgess, Freeman & Parham,
Greenville, S. C., for defendants Carson.

HEMPHILL, District Judge.

Plaintiff and defendant insurance companies, by cross motions and oppositions
to same, seek this forum's decision as to
their individual or collective obligations
to their named insured and others. The
determination is whether coverage is
properly classified as primary and secondary—excess, or concurrent and pro rata.
Allstate insists that Canal has primary
responsibility protecting both Vance, Allstate's insured, and Forrester, Canal's
named insured. Canal urges pro rata re-

sponsibility. Each relies on policy inclusions and exclusions of both as dissected together and separately.

This Court's review was had on December 8 and 9, 1965 in a declaratory action arising out of an automobile-truck collision in October, 1962 in Sumter County, South Carolina. Crucial to decision was determination of the agency of the driver of the truck, each of two trucking companies, Vance Trucking Lines and Forrester Trucking Company, contending that the driver was the agent and servant of the other at and before the time and place of the collision. This Court's order held that Vance and Forrester both had supervision of the driver at the time of the accident, that both were therefore liable. This order decided that both Allstate and Canal, insurers for Vance and Forrester respectively, would have to defend tort actions arising out of the accident. The question of the pecuniary responsibility of Allstate and/or Canal was not an issue then.

Subsequent to initial determinations, both Allstate and Canal filed motions[1] to have the order amended to declare the rights, duties, obligations and legal relations of the parties under the respective terms of their policies, especially as relates to pecuniary responsibility. Allstate has asked the court to find that its policy, issued to Vance, does not extend coverage to Burgess, the driver, or Forrester, but that the policy of Canal provides coverage to Vance, Forrester and the driver. Canal asks that the court determine the proportionate pecuniary responsibility of the insurers in relation to their respective coverages and the factual determinations heretofore made by the court. The matter is before the court under Rule 59(e), Federal Rules of Civil Procedure, but, aside from that, the parties have stipulated that it is properly before the court.

Basically, this is a controversy between two insurance companies over their related, or unrelated, obligations to their named insureds and others. In other words, is the coverage of one company primary and the other secondary and excess, or are the coverages concurrent and pro rata? Allstate submits that Canal's coverage is primary and protects Vance, Allstate's named insured, Forrester, Canal's named insured, and Burgess, the driver. Canal urges pro rata liability in asking the court to determine the "proportionate" responsibility of the parties. Both companies rely upon varying policy inclusions and exclusions in an effort to obtain the desired result.

Policy construction is imperative here since parties may contract to extend or limit insurance liability risks as they see fit. Thus, the issue here—the coverage of liability insurance—must be determined from the contractual intent and objectives of the parties as expressed in their policies and applicable endorsements. Fidelity & Cas. Co. of New York v. Reece, 223 F.2d 114 (10th Cir. 1955); 7 Appleman, Insurance Law & Practice, section 7481; 45 C.J.S. Insurance §§ 827 and 829. The extent or limit of risks, if unambiguous, must be taken in their ordinary and popular sense, and an insurer may not be compelled to assume liability which cannot be clearly said to be *within a fair* and reasonable interpretation of the contract. Fidelity & Cas. Co. of New York v. Reece, 223 F.2d 114 (10th Cir. 1955); Farm Bureau Mut. Auto. Ins. Co. v. Daniel, 104 F.2d 477 (4th Cir. 1939). The contentions of Allstate and Canal regarding their policies must be examined in this light.

Allstate would first focus all attention upon Canal's obligations but, while there may be no doubt about these obligations, the court cannot construe Canal's policy and delineate the obligations therein, without being simultaneously aware of Allstate's policy and the obligations there. It is not practical to consider either policy alone for it is apparent that both policies

1. Rule 59(e) Federal Rules of Civil Procedure was pursued (by agreement and by stipulation) which reads:

Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

were written with the express thought that other insurance might be involved.

In attempting to provide for a comprehensive policy, it is a common practice to include extended coverage clauses in automobile liability insurance contracts. Because of this, duplications of coverage would often be found were it not for the further practice of setting forth exclusions to coverage. Such exclusions or limitations may take many forms and may be found in the body of the policy or in endorsements. Regardless of where they are posited, however, these exclusions and limitations have led to a substantial body of jurisprudence. See, e. g., Annot., 76 A.L.R.2d 502; 7 Am.Jur.2d, Automobile Insurance, section 202 (1963); 8 Appleman, Insurance Law & Practice, sections 4911, et seq.

Here, both Allstate and Canal have rather comprehensive policies and both seek to limit particular coverages by exclusions. The extent to which reliance is placed upon an exclusion is shown by the fact that both Allstate and Canal assert a particular exclusion as a basis for denying coverage to one person or company or another Allstate relies completely on its exclusionary endorsement 14B–1 to deny coverage to Forrester and the driver. The endorsement, in part, provides:

With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply:

(a) except with respect to an employee of the named insured, to any person or organization, or to any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others (1) unless the accident occurs while such automombile is being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority.

\*    \*    \*    \*    \*    \*

Provided, however, a driver or other person furnished to the named insured with an automobile hired by the named insured shall not be deemed an employee of the named insured;

\*    \*    \*    \*    \*    \*

(d) with respect to any hired automobile, to the owner \* \* \* of such automobile, or to any agent or employee of such owner \* \* \*, if the accident occurs (1) while such automobile is not being used exclusively in the business of the named insured \* \* \*.

Other Insurance—Coverage A and B: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectable insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectable insurance.

Canal places no less reliance on its E–45 endorsement to deny coverage to Vance. Its endorsement provides:

In consideration of the premium charged for the policy to which this endorsement is attached, it is understood and agreed that no coverage is extended to any person, firm or organization using the described automobile pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement either written or oral, ex-

pressed or implied, the terms and provisions of the Insuring Agreement III, entitled 'Definition of Insured' notwithstanding.

In the event the automobile described in this policy is being used or maintained pursuant to any lease, contract of hire, bailment, rental agreement or any similar contract or agreement, either written or oral, expressed or implied, the insurance afforded the named insured shall be excess insurance over any other insurance.

Allstate urges that because of the 14B–1 endorsement its policy offers no protection to Forrester or the driver since the court has already found that the truck was not exclusively about the business of Vance. Unquestionably, the exclusion serves its purpose here. Forrester and Burgess are not covered under Allstate's policy.

Conversely, Canal urges that because of the E–45 endorsement its policy affords no protection to Vance or the driver. Again, unquestionably, this exclusion serves its purpose. Vance and Burgess are not covered under Canal's policy.

■ The controversy thus resolves itself to this: Allstate's policy protects Vance and Canal's policy protects Forrester. To escape this determination Allstate submits that the operation of the vehicle was not pursuant to the lease and, therefore, the E–45 exclusionary endorsement of the Canal policy would not operate to exclude from coverage "any person, firm or organization using the described automobile * * *." The Canal policy would then provide coverage for Vance and Burgess as well as Forrester, and the "other insurance" clause of the Allstate policy would then be of effect. That contention, however, is without merit. The order of this court which determined the relationship of parties drew no such conclusion. The lease was but one of several factors, but definitely not *the* controlling one, considered in that determination, but insomuch as the operation of the vehicle was of benefit to Vance it was obviously pursuant to the

lease. In fact, the lease set forth the terms and methods of compensation and other matters incident to the operation. That these provisions were in force and being followed is not questioned. It is the fact of the lease arrangement which created the concurrent responsibility, at a particular time and place, which so pervades this controversy. Moreover, the situation at hand, by any name, would clearly fall within the broad classifications contained in the endorsement.

There is no reasonable, plain and ordinary interpretation which may be applied to either policy to justify a finding that either insurer owes protection to anyone other than its named insured. This is not a case in which conflicting "other insurance" clauses are to be resolved. In those cases the controversy most often arises where there is a duplication of coverage. Where one party is covered by two insurance policies the conflict is usually resolved by a finding that one policy provides primary coverage and the other secondary coverage. The principles usually used in resolving these conflicts of "other insurance" clauses are summarized at 7 Am.Jur.2d, Automobile Insurance, section 202 (1963):

Many cases have arisen involving conflicts between insurance policies both of which purport to restrict or escape liability for a particular risk in the event that there is other insurance. Such conflicts have arisen, under automobile liability policies covering the same risk, in the following situations: (1) where one of the policies contains an 'excess insurance' clause and the other contains a 'pro rata' clause; (2) where one of the policies contains an 'excess insurance' clause and the other a 'no liability' clause; (3) where both of the policies contain an 'excess insurance' clause; (4) where one of the policies contains a 'pro rata' clause and the other contains a 'no liability' clause; and (5) where a 'no liability' clause expressly designates the types of insurance with which it might conflict.

That treatise further states that in the first situation the majority prefers the "excess" clause over the "pro rata" clause; that in the third situation pro rata contribution is generally required; that in the fourth situation the "no liability" clause is preferred over the "pro rata" clause; and in the fifth situation the "no liability" clause is preferred over the "excess" clause. Such rules as these, formulated in the hopeful quest of some logical reconciliation, have been characterized as "pursuing a will o' the wisp," Lamb-Weston, Inc. v. Oregon Auto. Ins. Co., 219 Or. 110, 341 P.2d 110, 346 P.2d 643, 76 A.L.R.2d 485 (1959), and have been rejected by many courts as a futile exercise.

> Their reasoning appears to us completely circular, depending, as it were, on which policy one happens to read first. Other cases seem to recognize the truth of the matter, namely, that the problem is little different from that involved in deciding which came first, the hen or the egg. Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co., 195 F. 2d 958, 960 (9th Cir. 1952).

One thing is apparent, the jurisprudence is multitudinous, multifarious and, in many respects, oppressive. A general rule can only be found within a particular category, and there are contrary opinions in each category. It is no mean task to undertake a review of the jurisprudence, for each circumstance had received extensive treatment and, because factual situations are rarely exact in comparison, legal guidelines are barely discernible.[2]

This situation has led a growing number of courts to decline to attempt a reconciliation. Rather than pursuing the "will o' the wisp," circular reasoning, or the attempt to resolve the hopeless, these courts have rejected the conflicting "other insurance" clauses in toto as being mutually repugnant, and have required proportionate, or pro rata responsibility. From a numerical, if not a jurisdictional, standpoint more recent cases have reached this result.[3]

The rule expressed in these cases has had its greatest following in Oregon and in decisions rendered by the Ninth Circuit based on Oregon law. Many of these cases have involved the situation in which one person was driving another's car and the ensuing conflict was between the insurers of the owner and the driver. See, e. g., Travelers Ins. Co. v. Peerless Ins. Co., 287 F.2d 742 (9th Cir. 1965); General Accident Fire & Life Assur. Corp., Ltd. v. Continental Cas. Co., 287 F.2d 464 (9th Cir. 1961); Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co., 195 F.2d 958 (9th Cir. 1952); Lamb-Weston, Inc. v. Oregon Auto. Ins. Co., 219 Or. 110, 341 P.2d 110, 346 P.2d 643, 76 A.L.R.2d 485 (1959).

Although the rule may have been regarded as an Oregon rule, a review of the cases will reveal that it has been applied with increasing momentum in other jurisdictions as well. See Continental Cas. Co. v. St. Paul Mercury Fire & Marine Ins. Co., 163 F.Supp. 325 (S.D. Fla. 1958); Continental Cas. Co. v. Weeks, 74 So.2d 367, 46 A.L.R.2d 1159 (Fla. 1954); Continental Cas. Co. v. New Amsterdam Cas. Co., 28 Ill.App.2d 489,

2. See commentaries corresponding to the American Jurisprudence categorization at Annot., 76 A.L.R.2d 502 (1961); Annot., 46 A.L.R.2d 1163, 1165 (1956); Annot., 69 A.L.R.2d 1122 (1960); 46 A.L.R.2d 1163, 1167; 46 A.L.R.2d 1163, 1168, which, with later case supplementation, highlights the expansiveness of the problem.

3. See, e. g., Liberty Universal Ins. Co. v. National Sur. Co., 338 F.2d 988 (5th Cir. 1964); Gilkey v. Andrew Weir Ins. Co., 291 F.2d 132 (9th Cir. 1961); Citizens

Mut. Auto. Ins. Co. v. Fireman's Fund Ins. Co., 234 F.Supp. 931 (W.D.Mich. 1964); Allstate Ins. Co. v. Atlantic Nat'l Ins. Co., 202 F.Supp. 85 (S.D. W.Va.1962); Maryland Cas. Co. v. Continental Cas. Co., 189 F.Supp. 764 (N.D. W.Va.1960); New Amsterdam Cas. Co. v. Certain Underwriters, 56 Ill.App.2d 224, 205 N.E.2d 735 (1965); Iowa Nat'l Mut. Ins. Co. v. Fidelity & Cas. Co. of New York, 62 Ill.App.2d 297, 210 N.E.2d 662 (1965); Farmers Ins. Exchange v. Fidelity & Cas. Co. of New York, 374 P.2d 754 (Wyo.1962).

171 N.E.2d 406 (1960); New Amsterdam Cas. Co. v. Certain Underwriters, 56 Ill. App.2d 224, 205 N.E.2d 735 (1965); Iowa Nat'l Mut. Ins. Co. v. Fidelity & Cas. Co., 62 Ill.App.2d 297, 210 N.E.2d 622 (1965); Reetz v. Werch, 8 Wis.2d 388, 98 N.W.2d 924 (1952); Farmers Ins. Exchange v. Fidelity & Cas. Co., 374 P.2d 754 (Wyo. 1962). The rule has also been applied in the lessor-lessee situation. See Liberty Universal Ins. Co. v. National Surety Co., 338 F.2d 988 (5th Cir. 1964); Gilkey v. Andrew Weir Ins. Co., 291 F.2d 132 (9th Cir. 1961); Citizens Mut. Auto. Ins. Co. v. Fireman's Fund Ins. Co., 234 F.Supp. 931 (W.D.Mich. 1964); Allstate Ins. Co. v. Atlantic Nat'l Ins. Co., 202 F.Supp. 85 (S.D. W.Va. 1962); Arditi v. Massachusetts Bonding & Ins. Co., 315 S.W.2d 736 (Mo. 1958); Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 147 A.2d 529, 69 A.L.R.2d 1115 (1959).

The problems of "other insurance" are but an enlightening adversion here, however, for we are not faced with such a problem. The applicable endorsements effectively negate duplicated coverage. Neither trucking company can claim coverage under any policy other than that in which it is the named insured. We have two separate lines of coverage which, in this instance, happen to reach a single act. There is a duality of coverage without a duplication. Each trucking company is concurrently liable and each must look to his own insurer. It follows that the measure of each insurer's response must be proportional to the amount of coverage each has provided. It does not appear that a factual situation sufficiently analogous to lend guidance has been decided by the courts, but, ultimately, the situation is not wholly dissimilar to the "other insurance" situation, and the result would be no different had there been a true duplication of coverage. By what is perhaps the majority view neither of the two "excess" clauses would be preferred and there would be required a proration. By the so called "Oregon" rule

both clauses would be nullified and proration required. There is no other rational basis of application than a pro rata response.

Allstate has submitted several cases for consideration apparently with the thought that these cases are dispositive of the controversy here. However, an examination of the cases will show that they are not factually similar or are expressive of the supposed general rule in conflicting "other insurance" cases. Allstate urges a consideration of American Surety Co. of New York v. Canal Ins. Co., 258 F.2d 934 (4th Cir. 1958), where an "excess" clause was given effect. In that case a lessee of a truck was covered as a named insured under American's policy and as an omnibus insured under Canal's policy. The American policy provided that it would furnish excess coverage as to hired vehicles. A similar Canal provision was to the effect that the policy would provide pro rata contribution if there were other insurance, with a proviso, however, that with respect to "temporary substitute automobiles" or "other automobiles" it would furnish only excess coverage.[4] This provision was held not applicable because as to Canal's named insured the truck was neither a "temporary substitute" nor an "other automobile." The excess clause of the American policy could be given effect without invalidating the pro rata contribution clause in the Canal policy because the pro rata clause could operate in those situations where the other insurance was not excess. As the case is readily distinguishable on its facts from the present controversy it is not deemed controlling here.

Likewise not applicable is Carolina Cas. Ins. Co. v. Pennsylvania Thres. & Farmers' Mut. Ins. Co., 327 F.2d 324 (3rd Cir. 1964). There, Allison, an ICC carrier, owned certain vehicles and was insured by P.T. & F. Kuhn Transportation Company, also an ICC carrier, owned certain vehicles and was insured by Carolina. The facts leading to a coverage controversy were that Allison, who had about half a

4. See American Surety Co. of New York v. Canal Ins. Co., 157 F.Supp. 386, 389 (W.D.S.C.1957) rev'd 258 F.2d 934 (4th Cir. 1958).

load, called Kuhn to ask if he had anything to be delivered in the same area as Allison's goods. There was no written lease of the vehicle to Kuhn and, though Kuhn had leased in the past from Allison, the testimony was that this was a different arrangement. The driver, an employee of Allison, testified that he obtained all of his instructions from Allison. After an accident occurred, P.T. & F. asserted that Carolina, Kuhn's insurer, had primary coverage because there was an oral lease of the vehicle and because Kuhn was required by the Pennsylvania Utility Commission to stand liable to the public. The district court found that there was no lease agreement and that Kuhn had simply hired Allison to haul certain goods to two customers.

The policies of both P.T. & F. and Carolina were identical and each contained identical endorsements of the 14B–1 type which Allstate has here. The driver was specifically excepted from P.T. & F.'s exclusion since it provided, as does Allstate's here, that "(a) except with respect to an employee of the named insured," no insurance is afforded any other person or organization. Aside from that, however, the exclusionary endorsement would not have helped P.T. & F. because under the terms of the endorsement, it only applied where *another* person or organization was "engaged in the business of transporting property by automobile for the named insured." Kuhn was not transporting property for Allison. Thus, as the Third Circuit held, Carolina's exclusion applied but P.T. & F.'s did not, and P.T. & F. was therefore held primary. In this respect, the decision is not unlike that of the Fourth Circuit in American Surety Co. of New York v. Canal Ins. Co.

Allstate also refers to cases cited in the *Carolina* case and thereby urges consideration of these as support. There are five cases cited in the *Carolina* decision, including American Surety Co. of New York v. Canal Ins. Co. which has already been considered, but none of these is determinative of the case here. In Nationwide Mutual Ins. Co. v. Fidelity & Cas.

Co., 188 F.Supp. 377 (W.D. Pa. 1960) rev'd 286 F.2d 91 (3rd Cir. 1961), a case in which three insurers were involved, all with similar "other insurance" clauses, the district court merely held that, under the varied facts of the case, it could not hold that Nationwide should be absolved. The court expressed no opinion on whether or not Nationwide might eventually get out. In reversing this decision, the Third Circuit held that the district court should have refused to entertain the action initially and that it was error to have directed Nationwide to defend. The other cases, expressly stating the Pennsylvania rule, do no more than follow the supposed general rule for resolving conflicting "other insurance" clauses.

The cases advanced are not factually or legally apposite, nor are they inconsistent with pro rata apportionment here. Allstate and Canal are liable concurrently and in proportion to the amount of insurance provided by each. Since, as to one person, the Allstate policy provides coverage to the limit of $500,000 and the Canal policy provides coverage to the limit of $100,000, Allstate must bear pecuniary responsibility of five-sixths and Canal must bear one-sixth of the amount of any judgment suffered, with the proration to be applied in like manner to the expense of defending the suits.

And it is so ordered.