Eugenia B. MACLOSKIE, as Executrix of the Estate of Charles W. Macloskie, Deceased, Plaintiff,

v.

ROYAL INDEMNITY COMPANY, the Hertz Corporation, Interurban Transit Lines, Inc., State Farm Mutual Automobile Insurance Company, Travelers Insurance Company, Delta Air Lines, Inc., and Thelma Sternaman, as Administratrix of the Estate of James D. Sternaman, Deceased, Defendants.

Civ. A. No. 8762.

United States District Court
D. South Carolina,
Charleston Division.

May 30, 1966.

deRosset Myers, Pritchard, Myers & Morrison, Charleston, S. C., for plaintiff.

Charles H. Gibbs, Sinkler, Gibbs & Simons, Charleston, S. C., for defendants Hertz Corp. and Royal Indemnity Co.

J. W. Cabaniss, Grimball & Cabaniss, Charleston, S. C., for State Farm Mut. Ins. Co.

R. A. Patterson, Barnwell, Whaley & Patterson, Charleston, S. C., for Travelers, Inc., and Delta Air Lines.

Henry T. Chance, of Harris, Chance, McCracken & Harrison, Augusta, Ga., for Interurban Transit Lines.

SIMONS, District Judge.

This action brought by Eugenia B. Macloskie, as Executrix of the Estate of Charles W. Macloskie, who was killed as a result of an automobile accident occurring on October 7, 1963, in Columbia County, Georgia, seeks a declaratory judgment determining the obligations and liabilities of the defendants to defend any actions and pay any judgments obtained against said Estate.

The complaint alleges in substance that Charles W. Macloskie rented a 1962 Chevrolet automobile from defendants. The Hertz Corporation and Interurban Transit Lines, Inc., which was owned by

Interurban; and that while he and three other persons, James D. Sternaman, David McAndrew, and Clyde S. Boggs were being transported in the automobile, a collision occurred. Macloskie and Sternaman died in or shortly after the accident, and a suit for wrongful death by Sternaman's personal representative has been filed against Macloskie's Estate and his employer, Delta Air Lines, Inc., alleging that Macloskie at the time of the fatal collision was acting within the course of his employment. Defendant Royal Indemnity Company denied coverage and refused to defend this suit; defendant State Farm Mutual Automobile Insurance Company is defending under a reservation of rights to disclaim coverage; and defendant Travelers Insurance Company has undertaken to defend its insured, Delta Air Lines, Inc., denying that plaintiff's testate was acting within the course and scope of his said employment at the time of the collision.

The complaint also alleges that Interurban and Hertz were insured under a liability policy issued by the defendant Royal Indemnity Company, that defendant State Farm Mutual Automobile Insurance Company insured Macloskie's private automobile, which was not involved in this collision, and that Macloskie was an employee of Delta Air Lines, the latter being insured under a policy issued by defendant Travelers Insurance Company.

This court reluctantly consented to hear this action under the circumstances herein existing. Although a suit is pending in this jurisdiction for the wrongful death of one James D. Sternaman, a passenger in subject automobile at the time of the collision, no judgment has been obtained in that case and, in fact, the case may never come to trial. Nevertheless, plaintiff asks the court to determine in advance the various duties, obligations and responsibilities of the parties in relation to each other, as well as to construe conflicting and repugnant insurance policy provisions.

In the present action plaintiff asks the court to determine that Royal Indemnity and State Farm are both jointly responsible for the defense of the pending action and any other actions arising out of the accident on October 7, 1963, and that they be adjudged to be liable to pay any final judgments obtained against plaintiff up to the limits of their policies.

Hertz and Interurban have been joined as parties, and plaintiff has asked in the alternative that they be held liable, along with State Farm, to undertake to defend plaintiff and to pay any judgments up to the limits set forth in the rental contract with Macloskie, should the court find that no coverage is provided by Royal's policies.

Although Delta Air Lines, Inc., and Travelers Insurance Company have been joined as parties to this suit, it has been agreed by counsel for the parties that the issue of agency between Delta and Macloskie at the time of collision is not before the court in this suit and need not be decided herein.

Defendants Royal Indemnity and the Hertz Corporation in their answer deny liability on the ground that their contractual obligation was avoided by Macloskie's violation of the provisions of both the lease agreement and the insurance policy by the exclusion relating to the transportation of persons for a consideration, express or implied, and that the car at the time of the accident was being used as a public or livery conveyance, which use was expressly excused from the personal liability coverage of Royal's policies.

In its answer State Farm alleges that its policy issued to Macloskie covering his personal automobile, which was not involved in the collision, only provided excess insurance under the facts of this case where its insured was driving a non-owned automobile. It asks the court to declare that the Royal Indemnity policy provided primary coverage to plaintiff for all liability claims arising out of the collision, and that Royal be required to defend plaintiff in all such suits and pay any judgments obtained against plaintiff up to the limits of its policy.

At the time of the collision defendant Royal Indemnity Company had in effect two policies of automobile liability insurance with which we are concerned. One covered both The Hertz Corporation and Inter Urban Transit Lines, Hertz System Licensee, and the other covered only The Hertz Corporation. Each had limits for bodily injury liability of $100,-000.00 for each person and $300,000.00 for each accident; and limits for property damage liability of $25,000.00 for each accident. The effective date of both policies was January 1, 1963, and they were in full force and effect on the date of the accident. Both policies contained an exclusion providing that they did not apply while the insured vehicle was being used as a public or livery conveyance, or while being used to carry passengers for a consideration, express or implied. The applicable portions of these policies read as follows:

> "*EXCLUSIONS*—This policy does not apply to: (A) (1) Any automobile * * * while used, rented or leased as a public or livery conveyance or for carrying property for a charge; * * * and (C) any liability of the renter or members of his immediate family * * * with respect to bodily injury to, sickness, disease or death of any persons or damage to property caused in whole or part by an automobile insured hereunder while being used to carry passengers for a consideration, express or implied. * * * *"

In support of their defense that their contractual obligation was vitiated by Macloskie's violation of the provision in both the Rental Agreement and the insurance policies prohibiting the transportation of persons for a consideration, express or implied, defendants Royal Indemnity and Hertz offered deposition testimony of the surviving passengers, Boggs and McAndrew, which substantiated that Macloskie had agreed with Boggs, McAndrew, and Sternaman to transport them from the airport in Atlanta, Georgia to Augusta, Georgia, on a share the cost basis for the rental automobile.

The Inter Urban policy, however, contained an endorsement entitled, Livery Permit Form C, which provided:

> "In consideration of an additional premium of $included_____, permission is granted for the automobile described in the policy designated above to be used as a public or livery conveyance or for carrying persons for a charge; provided, however, that if such policy covers loss of or damage by theft, larceny, robbery or pilferage the company shall not be liable for any loss which the insured may sustain due to conversion, embezzlement or secretion by any person in possession of any automobile described in such policy.
>
> This endorsement is subject to the limits of liability, exclusions, conditions and other terms of such policy which are not inconsistent herewith."

Plaintiff asserted on trial that this endorsement removed the policy exclusion against carrying passengers for hire; that the contract between Royal Indemnity Company and Macloskie is clear and unambiguous and cannot be altered or contradicted by outside evidence under the Parol Evidence Rule. Defendant Royal Indemnity contends that the contract between it and Macloskie, and when construed as a whole, clearly shows that the endorsement refers only to the physical damage section of the policy, and alternatively asserts the right to explain the purport of the section by parol evidence on the grounds of ambiguity or mistake. Subject to the objections of its co-defendants. State Farm Mutual Automobile Insurance Company, Delta Air Lines, Inc., and Travelers Insurance Company, the testimony of a company official and the Assistant Deputy Commissioner of Insurance from the State of Georgia was offered to show that the disputed amendment was only referable to physical property damage.

The issues to be determined by this court are: (1) Was Macloskie engaged in carrying passengers for a consideration, express or implied, within the meaning of the applicable Georgia law? (2) If

so, did the exclusions as to such acts of the insured avoid or vitiate Royal's liability coverage over such automobile, in view of Livery Permit Form C incorporated in the policy by endorsement which specifically provided that "permission is granted for the automobile described in the policy designated above to be used as a public or livery conveyance or for carrying persons for a charge? (3) Did the policy issued by State Farm provide concurrent prorata coverage, or only excess coverage?

The case was tried before me without a jury at Charleston, South Carolina, on March 2, 1966. I have carefully considered all the testimony and evidence submitted, including a study of the various exhibits before the court.

In compliance with Rule 52(a) of the Federal Rules of Civil Procedure, I find the facts specially and state my conclusions of law as follows:

### FINDINGS OF FACT

1. Plaintiff, Eugenia B. Macloskie, a citizen and resident of the State of Florida, is the duly appointed Executrix of the Estate of Charles W. Macloskie, deceased, by the Probate Court of Charleston County, South Carolina; that there is diversity of citizenship between plaintiff and defendants, and the amount in controversy exceeds $10,000 exclusive of interest and costs.

2. Defendants have all been properly served and are within the jurisdiction of this court.

3. Defendant Royal Indemnity Company is an insurance corporation organized and doing business under the laws of the State of New York, is licensed under the laws of the State of South Carolina, and transacts business within this State.

4. Defendant The Hertz Corporation is a corporation organized and doing business under the laws of the State of Delaware, and is licensed to transact business within the State of South Carolina.

5. Defendant Interurban Transit Lines, Inc., is a corporation organized and doing business under the laws of the State of Georgia, and operates a car rental business as a licensee of The Hertz Corporation.

6. Defendant State Farm Mutual Automobile Insurance Company is an insurance corporation organized and doing business under the laws of the State of Illinois and is licensed to do business under the laws of the State of South Carolina and transacts business in South Carolina.

7. Defendant Travelers Insurance Company is an insurance corporation organized under the laws of the State of Connecticut and is licensed to do business in the State of South Carolina and transacts business in South Carolina.

8. Defendant Delta Air Lines, Inc., was organized under the laws of the State of Louisiana and maintains offices and transacts business within the State of South Carolina.

9. Defendant Thelma Sternaman is a resident and citizen of the State of Michigan, has been duly appointed Administratrix of the Estate of James D. Sternaman, deceased, by Order of the Probate Court for Charleston County, and is properly before the court by service on her statutory agent, Henry H. Edens.

10. On or about October 7, 1963 Macloskie entered into an arrangement with three soldiers, James D. Sternaman, Clyde S. Boggs and David McAndrew, to transport them in a rented automobile from Atlanta to Augusta, Georgia on a share the expense basis. An emergency situation developed in that none of the four individuals were able to get air transportation out of Atlanta, and the three passengers were due to report back to Fort Jackson at Columbia, South Carolina, early that morning. Thus a hasty arrangement was made whereby they would travel to Augusta with Macloskie who was renting a U-Drive-It car. No payment was actually made to Macloskie as the final amount to be paid by the passengers was to be determined upon their arrival at the Interurban office in Augusta, Georgia.

11. Thereafter, Macloskie entered into a contract for valuable consideration

with defendant The Hertz Corporation whereby he agreed to rent a 1962 Chevrolet automobile owned by defendant Interurban Transit Lines, Inc., a Hertz System Licensee, under Rental Agreement No. 4348125.

12. Royal Indemnity Company's policy applicable to the within action is its policy number RLF 001817 with effective date from January 1, 1963, until cancelled, to the following named insureds:

"(a) HERTZ SYSTEM, INC., a Delaware Corporation, THE HERTZ CORPORATION, a Delaware Corporation, and ALL SUBSIDIARY OR ASSOCIATED CORPORATIONS (now existing or hereinafter organized during the period of this policy) of each or all of the foregoing corporations [and] (b) INTERURBAN TRANSIT LINES, HERTZ SYSTEM LICENSEE, 515 SKYVIEW DR., AUGUSTA, GA."

This policy was in full force and effect at the time of the collision on October 7, 1963. It is stipulated by the parties that this policy was issued in the State of Georgia, the rental contract between Macloskie and Hertz was entered into there, and the collision occurred there, therefore Georgia law is applicable in these areas.

The Royal policy also included in its provisions the limits of bodily injury and property damage liability, the exclusions and the Livery Permit endorsement as hereinabove set out.

Royal's policy further provided:

"INSURING AGREEMENTS I, Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, cause by accident and arising out of hazards as defined, with respect to the operations of the licensee named in Item 1, b of the declarations."

"INSURING AGREEMENTS III, Definition of Insured. The unqualified word "insured" includes the named insured and also (1) any person, firm, association, partnership or corporation to whom an automobile has been rented without a chauffeur (hereinafter referred to as the "renter"). * * *"

"CONDITIONS, 17. Other Insurance —Coverages A and B. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of said loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

13. State Farm's policy number 658300-E17-40 issued by it to Charles W. Macloskie was in full force and effect at the time of the accident with personal injury liability limits of $10,000 for one person and $20,000 for each accident. It is stipulated that it was issued in South Carolina and that the law of this State applies thereto.

Under Insuring Agreement II—Non-Owned Automobiles, State Farm's policy provides liability coverage over the use of a non-owned automobile by the named insured. With respect to this agreement the policy further provides at page 4:

"14. Other Insurance. If the insured has other insurance against liability or loss covered by this policy, the company under all coverages except coverages C and M [not applicable here], shall not be liable for a greater proportion of such liability or loss than the applicable limit of liability bears to the total applicable limit of liability of all collectible insurance against such liability or loss. * * *"

"All the foregoing provisions and all coverages are subject to the following: * * * (b) The insurance with respect to a temporary substitute automobile, a trailer and a non-owned automobile shall be excess over other collectible insurance."

14. While Macloskie and his three passengers were enroute to Augusta, Georgia, in the rented automobile they

were involved in a collision with another vehicle, resulting in the death of Macloskie and his passenger, James D. Sternaman, and personal injuries to the other two passengers in the car. A suit has been instituted by the personal representative of James D. Sternaman against plaintiff as personal representative of the Estate of Charles W. Macloskie, and demand has been made by her upon Royal Indemnity Company and State Farm Mutual Automobile Insurance Company to defend the said action and any others that might arise out of the collision.

## CONCLUSIONS OF LAW

At the time of the collision was the insured Macloskie transporting his passengers, Sternaman, McAndrew and Boggs, "for a consideration, express or implied"?

■ This question is to be answered in the light of the applicable Georgia law. From my research it clearly appears under the uniform decisions of the Court of Appeals of Georgia that where a share-the-expenses ride in a motor vehicle is agreed upon by the operator and a passenger therein, such a situation makes the passenger a passenger-for-hire and not a guest, requiring the driver to exercise ordinary care toward his passenger, rather than slight care owed to a gratuitous guest. Fountain v. Tidwell, 92 Ga.App. 199, 88 S.E.2d 486 (1955); Holland v. Boyette, 93 Ga.App. 497, 92 S.E.2d 222 (1956); Owens v. White, 103 Ga.App. 459, 119 S.E.2d 581 (1943); Youmans v. Barry, 104 Ga.App. 762, 123 S.E.2d 158 (1961); Varga v. Williamson, 110 Ga.App. 684, 139 S.E.2d 518 (1964). In the last cited case the Court said at 139 S.E.2d 519:

"Where a defendant proposes to a plaintiff that if plaintiff would buy some beer for the defendant the defendant would provide the plaintiff with a ride to a certain point and the plaintiff accepts said offer and purchases the beer for the defendant, the plaintiff becomes a passenger for hire in the car of the defendant on a ride to the agreed destination."

■ Thus, Macloskie's passengers in the rented vehicle at the time of the collision were passengers for hire, and were being transported by him for an express consideration. Therefore, the exclusions for such acts contained in both the Royal policy and the Hertz Rental Agreement would eliminate liability coverage, unless such exclusions were overridden by some other policy provision or endorsement.

In determining the rights of the insured and the obligations of the insurer in this case we must look to the contents of the entire insurance policy and the provisions of the Hertz Rental Agreement. They must be considered together to determine the intention of the parties as expressed in the contracts. General rules for construction of insurance policies are aptly stated in 7 Am.Jur.2d, Automobile Insurance, § 2, at pp. 293–294 as follows:

"Under an automobile insurance policy, the rights of the insured and the liability of the insurer must be determined by the intention of the parties as expressed in the policy. The policy is to be construed in the light of the subject matter with which the parties are dealing and the purpose to be accomplished, and the language used must be given its ordinary and commonly accepted meaning. The test of the intent of the parties to an automobile insurance policy is the common understanding of men, and since an insurance policy is a contract designed to furnish protection, it should, if reasonably possible, be so construed as to accomplish that objective and not to defeat it. If the language of an automobile insurance policy is reasonably susceptible of different interpretations, the general principle applies that such language will be given the construction most favorable to the insured. Therefore, one injured as the result of the negligent operation of an automobile covered by a liability policy can take advantage of the rules of strict construction applicable against the insurer. But the rule of liberal

construction in favor of the insured applies only when the contract is ambiguous and susceptible of more than one interpretation; where the language is plain and unambiguous there is no occasion for construction, and the language must be given its plain meaning.

If there is doubt as to the extent or fact of coverage, the language will be construed in its most inclusive sense for the benefit of the insured. But no term of such a policy is either uncertain or ambiguous if its meaning can be ascertained by fair inference from other terms thereof, for in determining the meaning of a certain provision, the court is not limited to consideration of the provision alone, but must construe the policy in its entirety, endeavoring, if possible, to ascertain the mutual intention of the parties as it existed at the time of the execution of the instrument.

If there is a conflict in meaning between an indorsement and the body of the policy, the indorsement controls."

 The Georgia law appears in full accord with the foregoing principles. See Johnson v. Mutual Life Ins. Co., 154 Ga. 653, 115 S.E. 14 (1922); Barker v. United States, 233 F.Supp. 455 (N.D. Ga.1964); Macon Auto Auction, Inc. v. Georgia Casualty and Surety Co., 104 Ga.App. 245, 121 S.E.2d 400 (1961). Where a policy of insurance is reasonably susceptible of more than one construction, the interpretation most favorable to the insured will be given effect, resolving all ambiguities against the insurer. Aetna Life Ins. Co. v. Padgett, 49 Ga. App. 666, 176 S.E. 702 (1934); Gill v. Federal Life & Casualty Co., 86 Ga.App. 455, 71 S.E.2d 683 (1952).

 However, from my review of Royal's policy and Livery Permit Form C Endorsement thereto, considered together with the Hertz Rental Agreement, I do not perceive any ambiguities in the policy terms. The endorsement is quite clear, and it is unequivocal in its pronouncement that permission is granted for the automobile described in the policy designated above to *"be used as a public or livery conveyance or for carrying persons for a charge."* (Emphasis added.) It is obvious that the purpose of the endorsement was to eliminate the exclusion which Royal now attempts to obliquely assert. It is only logical to assume that Hertz, who proclaimed to the public that its rental cars were covered by $100,000/ $300,000 personal injury liability insurance, reasonably anticipated that many of its customers would carry passengers on a share-the-expense or a charge basis expecting to be covered by proper liability insurance. Of course, then, for Hertz to extend liability coverage under its Georgia contracts to its customers, it logically follows that Hertz would eliminate the rental contract exclusions from such policy for the benefit of the unsuspecting public. Otherwise, the demands of public policy should reasonably require that the renters of automobiles specifically inform its lessees at the time of entering into rental contracts that the fine print in its rental agreements and its liability insurance policy exclude all passengers other than strictly gratuitous guests, who would not be permitted by prearrangement to share gas and oil, or rental expenses to any extent, nor be permitted to buy the operator a beer, coke or a meal in transit.

 At trial, before the court had an opportunity to study the provisions of the Royal policy, Royal's counsel was permitted over objections of all other parties' counsel to introduce parol and other extrinsic evidence to vary and attempt to explain the clear and unambiguous provisions of the policy and to substantiate its contention that the Livery Permit Form C Endorsement was intended to apply to physical damage coverage only and not to the liability provisions of its policy.

I am now convinced that such parol evidence was inadmissible to explain the purport of said endorsement on the grounds of ambiguity or, alternately, of mistake. As before stated I find no ambiguity in the policy if the language used

is given its clear, plain and customary meaning.

Parol or extrinsic evidence should not be permitted to vary the terms of Royal's insurance contract or the Hertz Rental Contract with Macloskie. As was stated in 29A Am.Jur., Insurance, § 1912, pp. 965–966:

"In accordance with the general rule applicable to all contracts, that extrinsic evidence is not admissible to contradict, subtract from, add to, or vary a written instrument, the rule in insurance cases is that parol evidence is not admissible to aid in the construction of an unambiguous insurance policy. This rule applies not only as between the parties, but also as to a person who subsequently ratifies the policy as one for his benefit, and under this rule the contract cannot be altered by parol evidence of the interests intended to be insured, of the parties to the contract, or of the subject matter to which it was intended to be applied." [Citing Maril v. Connecticut Fire Ins. Co., 95 Ga. 604, 23 S.E. 463 [30 L.R.A. 835] (1895)].

See also Holloway v. Brown, 171 Ga. 481, 155 S.E. 917 (1930).

■ The Rental Agreement for the 1962 Chevrolet between Macloskie and Hertz incorporated by reference the terms and conditions of the Royal policy by the provisions of its paragraph 7 which provides:

"Customer, being an insured under said [liability insurance] policy agrees to comply with and be bound by all the terms, conditions, limitations and restrictions thereof, which are hereby incorporated by reference herein and made a part of this rental Agreement as fully as if set forth at length. * * * "

Thus, when Royal's policy was amended by the addition of the "Livery Permit Form C" Endorsement granting permission for the policy's insured to use the Hertz leased automobile "for carrying persons for a charge" and thereby eliminating such exclusion from said policy,

the amendment was also incorporated in the Rental Agreement by reference, and effectively eliminated or overrode the same exclusion contained in the fine print of the Rental Agreement.

In accordance with my views herein expressed I find and conclude that Royal's policy provided liability coverage to Macloskie with respect to the collision which occurred on October 7, 1963, regardless of the status of the passengers; and that Royal is responsible for the defense of the pending action and for the handling of other claims arising out of the accident in accordance with the policy provisions.

I find that the State Farm policy number 658300–E17–40 was in full force and effect, and also provided liability coverage with the limits hereinbefore stated to Macloskie at the time of subject collision.

■ Having concluded that the liability policies of both defendants Royal Indemnity Company and State Farm Mutual Insurance Company provided effective liability coverage to Macloskie at the time of the collision, it now becomes necessary to determine whether the obligations and liabilities of the two insurers are concurrent and prorata, or that one is primary, and the other is secondary and excess coverage only. This determination must be made from a consideration of the provisions of both policies considered together. The intentions of the insurers as expressed in their policy provisions should be given full force and effect if at all possible to do so.

As above noted, both policies contained the usual "other insurance" clauses providing generally that if the insured has other insurance against liability or loss covered under such policy, each insurer under all coverages would not be liable for a greater proportion of such liability or loss than its limit of liability of all collectible insurance against such loss. In addition State Farm's policy specifically provided that its policy should only be excess coverage over other collectible

insurance in connection with its insured's operation of a non-owned automobile.

A review of the decisions from the various jurisdictions relative to the conflicting provisions of prorata "other insurance" clauses demonstrates that there is a wide variance in opinion in such areas.[1] The general principles usually employed by the courts in resolving such insurance policy conflicts are well stated in 7 Am.Jur.2d., Automobile Insurance, § 202, at pp. 544–546. Had State Farm's policy not included the "other insurance" provision applying to non-owned automobiles, the court would be constrained to find that the prorata provisions of the two policies were mutually repugnant, and that each insurer should have concurrent and prorata responsibility to defend and pay any judgments obtained against plaintiff. Nevertheless, State Farm's policy specifically provided that its non-ownership coverage of the insured is only "excess over other collectible insurance."

The majority rule is announced in 8 Appleman, Insurance Law and Practice, Section 4914 (1942 Ed.).

When the owner of an automobile has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above other valid and collectible insurance, the owner's insurer has the primary liability. * * Under this rule the courts give no application to the other insurance clause in the primary policy, which provides that if the additional insured has other valid and collectible insurance, he shall not be covered by the primary policy.

The Fourth Circuit case of American Surety Co. of N. Y. v. Canal Insurance Co., 258 F.2d 934 (1958), involves a factual situation quite similar to that in the instant case. In that case Canal Insurance Company had issued its liability insurance policy to Mary B. Southerlin covering one 1952 white tractor which had been leased by her to Johnson Motor Lines. American Surety Company's policy insured Johnson Motor Lines, and specifically provided that its insurance of Johnson's liability arising out of its use of hired vehicles is excess insurance over other collectible insurance available to Johnson under a policy applicable to the vehicle itself. The question before the court there was whether the obligations of the two insurers were concurrent and prorata, or whether the one was primary and the other secondary and excess. In resolving conflicting provisions in the two insurance policies quite similar to ours the court, at page 936, stated:

Such excess insurance clauses serve a useful purpose in avoiding conflict. They are neither invalid nor unconscionable, and they may be given effect without invalidating a pro rata contribution clause in the policy providing other protection. Canal's policy here limits its liability to a proportion of the loss, based upon the relation of the policy limits, if there is other valid and collectible insurance available to the insured. That clause operates in countless situations in which the other insurance is not excess, and it is not rendered meaningless if appropriate effect is given to the excess insurance clauses. Thus, it is generally held, as stated by Appleman, in referring to our exact situation, that "a nonownership clause (coverage of liabilities arising out of the use of a hired or other vehicle) with an excess coverage provision, does not constitute other valid and collectible insurance, within the meaning of a primary policy with an omnibus clause."

In *American Surety* the Fourth Circuit held that Canal's coverage was primary and that of American Surety was

1. Attention is invited to the recent lucid opinion of my colleague, District Judge Robert W. Hemphill, in his opinion in the case of Vance Trucking Co., Inc. v.

Canal Ins. Co., 251 F.Supp. 93, from the Greenville Division of this court, decided March 9, 1966.

secondary and excess, and that the latter was entitled to reimbursement from Canal up to the limits of its liability in its policy for amounts paid by American Surety in satisfying judgments resulting from tort actions, and the costs, expenses and attorneys' fees incurred in the investigation and defense of the tort claims by American Surety.

I find and conclude that Royal Indemnity's policy affords plaintiff the primary coverage in this case up to the limits of liability contained in its policy with the resultant obligation to be fully responsible for plaintiff's defense in the Sternaman suit, and in any other personal injury and property damage actions arising out of the collision; that State Farm's coverage is secondary and excess coverage only; and that State Farm has no responsibility to defend plaintiff with its liability being brought into play only by judgments being obtained against plaintiff in excess of Royal Indemnity's coverage to plaintiff under its policy.

And it is so ordered.

Let judgment with costs be entered accordingly.