**VANCE TRUCKING COMPANY, Inc, and Allstate Insurance Company, Appellants,**

v.

**CANAL INSURANCE COMPANY, Forrester Trucking Company, Inc., Herbert Francis Carson, Scott Carson, Susan Carson, David Carson, Christopher Carson, and Robert H. Carson, Administrator of the Estate of Annie Barbara C. Carson, Deceased, Appellees.**

**No. 10669.**

United States Court of Appeals Fourth Circuit.

May 7, 1968.

---

**392**

O. G. Calhoun, Jr., Greenville, S. C. (W. Francis Marion, Greenville, S. C., on brief), for appellants.

Wesley M. Walker, Greenville, S. C. (O. Doyle Martin and Leatherwood, Walker, Todd & Mann, Greenville, S. C., on brief), for appellees Canal Ins. Co. and Forrester Trucking Co., Inc.

C. T. Wyche, Greenville, S. C. (David L. Freeman and Wyche, Burgess, Freeman & Parham, Greenville, S. C., on brief), for appellees Carsons.

Before SOBELOFF, BOREMAN and J. SPENCER BELL,* Circuit Judges.

BOREMAN, Circuit Judge:

Different phases of this litigation have heretofore been in the federal courts. The case was here once before on a question not now involved in this appeal and was remanded to the district court for further proceedings.[1] On remand the district court made necessary findings of fact and stated its conclusion that both Vance Trucking Company (Vance) and Forrester Trucking Company (Forrester), and their insurers, must defend in a tort action in the district court which precipitated this controversy.[2] Since the district court there stated the facts in detail it is unnecessary to restate them fully here. However, a very short statement of undisputed facts is included herein in order to acquaint the reader with the general nature of the litigation.

At all times pertinent hereto Forrester was a licensed trucking company with an office and a terminal at Sumter, South Carolina, and was engaged primarily in hauling with its own motor vehicles certain commodities within South Carolina under authority of the South Carolina Public Service Commission. During slack seasons Forrester

---

* Judge Bell participated in the hearing and concurred in the disposition of the case but died before the opinion was prepared.

1. Vance Trucking Company v. Canal Insurance Company, 338 F.2d 943 (4 Cir. 1964).

2. Vance Trucking Company v. Canal Insurance Company, 249 F.Supp. 33 (D.S.C. 1966).

leased vehicles to Vance for use in interstate hauling, Vance being licensed to operate interstate under authority of the Interstate Commerce Commission. Vance had its main office at Henderson, North Carolina, and maintained a terminal and dispatcher at Lake City, South Carolina. Forrester was the named insured in a liability policy issued by Canal Insurance Company (Canal) with limits of $100/$300,000. Vance was the named insured in a liability policy issued by Allstate Insurance Company (Allstate) with limits of $500/$500,000.

During the summer of 1962 Vance and Forrester entered into a lease agreement whereby Forrester was to furnish tractor-trailer trucks and drivers to Vance for its use in hauling commodities for Vance's own customers. The leased vehicles operated primarily out of Vance's terminal at Lake City with drivers furnished by Forrester and who were approved by Vance according to the terms of the lease agreement.

Sammie Burgess, an uneducated Negro then fifty years old, was one of Forrester's drivers. On October 3, 1962, Vance's dispatcher in Lake City called Forrester's office and asked that a driver be sent to the terminal the following morning to transport a load of tobacco to Fairmont, North Carolina. Pursuant to this request Burgess, who had been driving the leased vehicles for Vance on other occasions, reported to the dispatcher, and picked up a loaded tractor-trailer unit which was already in Lake City. After delivering the cargo in Fairmont, Burgess returned to Lake City and was instructed by Vance's dispatcher to take the tractor and an empty trailer to Forrester at Sumter. On the way to Sumter the vehicle operated by Burgess was involved in an accident in which Mrs. Barbara Carson was killed and her husband and four children were injured.

Upon consideration of all the facts and circumstances the district court determined that, at the time of the accident, Burgess was then and there the agent and servant of both Vance and Forrester; that both Vance and Forrester were responsible for the acts of Burgess; and that Vance and Forrester, and their insurers, must defend in tort actions brought on behalf of the Carsons.[3] The question of "proportionate pecuniary responsibility" had not been presented and the court rendered no decision with respect thereto at that stage of the proceedings. Since we conclude that the factual findings are supported by substantial evidence we cannot say that they are clearly erroneous. Permissible inferences and conclusions were drawn from the facts as found and we affirm that portion of the decision below as reported at 249 F.Supp. 33.

Subsequent to the initial determination with respect to the tort liability of Vance and Forrester the plaintiffs, Vance and Allstate, and the defendants, Forrester and Canal, moved that the order and judgment of the district court be supplemented, altered or amended by determining the questions of insurance coverage. Thereafter the district court held that Allstate was pecuniarily responsible for five-sixths of the amount of any judgments obtained by the Carsons growing out of the accident, and that Canal would be pecuniarily responsible for one-sixth of the amount of any such judgments. Vance Trucking Company v. Canal Insurance Company, 251 F.Supp. 93 (D.S.C.1966).

Assuming, *arguendo*, the correctness of the district court's determination that both Vance and Forrester were responsible for the acts of Burgess, Allstate contends that Canal's coverage is primary and protects Allstate's named insured (Vance), Canal's named insured (Forrester), and Burgess, the driver. Canal urges pro rata liability in asking for a determination of "proportionate" pecuniary responsibility of the parties. Both Allstate and Canal rely upon various policy provisions, inclusions and exclusions, in an effort to support their contentions.

3. 249 F.Supp. 33, cited n. 2 supra.

The district court stated that a construction of the insurance policies was necessary and that the issue as to the liability coverage must be determined from the contractual intent and objective of the parties as expressed in their policies and applicable endorsements. The court concluded that by reason of the respective policy provisions neither policy covered Burgess at the time of the accident.

Allstate's endorsement 14–B provides that the policy does not apply to persons, their agents or employees, engaged in transporting property for Vance "unless the accident occurs while such automobile is being used exclusively in the business of the named insured." The "other insurance" clause in the Allstate policy provides that if the insured, Vance, had "other insurance against a loss covered by this policy the Company [Allstate] shall not be liable under the policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance." The district court found that the vehicle involved in the accident was not being used *exclusively* in the business of Vance, Allstate's named insured, and that neither Burgess nor Forrester was covered by the Allstate policy.

Canal's policy, in which Forrester is the named insured, contains an exclusion clause which provides that no coverage is extended to "any person, firm or organization using the described automobile pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement either written or oral, expressed or implied." This policy further provides that when the automobile described therein is being used pursuant to a lease "the insurance afforded the named insured [Forrester]

shall be excess insurance over any other insurance." The court found that Burgess was operating the accident vehicle pursuant to the lease agreement and, consequently, neither Burgess nor Vance was covered by the Canal policy.

At 251 F.Supp. 93, 96, the court stated:

"There is no reasonable, plain and ordinary interpretation which may be applied to either policy to justify a finding that either insurer owes protection to anyone other than its named insured. This is not a case in which conflicting 'other insurance' clauses are to be resolved. In those cases the controversy most often arises where there is a duplication of coverage."

Following an extended discussion of "other insurance" policy provisions, the court continued:

"The problems of 'other insurance' are but an enlightening adversion here, however, for we are not faced with such a problem. The applicable endorsements effectively negate duplicated coverage. Neither trucking company can claim coverage under any policy other than that in which it is the named insured. We have two separate lines of coverage which, in this instance, happen to reach a single act. There is a duality of coverage without a duplication. Each trucking company is concurrently liable and each must look to his own insurer. It follows that the measure of each insurer's response must be proportional to the amount of coverage each has provided. It does not appear that a factual situation sufficiently analogous to lend guidance has been decided by the courts, but, ultimately, the situation is not wholly dissimilar to the 'other insurance' situation, and the result would be no different had there been a true duplication of coverage. By what is perhaps the majority view neither of the two 'excess' clauses would be preferred and there would be required a proration. * * *. There is no other rational basis of applica-

tion than a pro rata response." 251 F.Supp. at 98.

The district court considered several cases which had been cited by Allstate as providing the answer to the controversy here. Upon analysis the court found those cases distinguishable, inapposite, and dispositively unpersuasive.

Further assuming, *arguendo,* on this appeal that Forrester and Vance are liable to the third parties involved in the accident and that Burgess was not covered by either policy, Allstate contends that the liability of both insurance companies sounds in contract rather than tort. It then points to a decision of the Supreme Court of South Carolina, which was handed down only a few days before the district court's decision as to proportionate pecuniary responsibility, which was not considered by the district court. The South Carolina case is Galloway v. Southern Farm Bureau Ins. Co., 247 S.C. 288, 147 S.E.2d 271 (March 1, 1966). Allstate urges that the *Galloway* case supports its contention that the prorating of the liability of the insurance companies in the circumstances here is error. That case involved a suit by Galloway, a passenger in a vehicle owned by L. C. Tolson, which was in possession of the owner's son, Darrell Tolson, with his father's consent. In turn, Darrell Tolson permitted Raymond Wilkes to drive and while the latter was negligently operating the vehicle it was involved in an accident resulting in injury to Galloway. Galloway was paid $10,000, the limit under the L. C. Tolson policy which covered the particular vehicle. He obtained a $100,000 judgment against Raymond Wilkes. At the time of the accident there were in force two policies of automobile liability insurance that had been issued by Southern Farm Bureau Insurance Company to Raymond Wilkes' father, C. A. Wilkes. The policies were identical in form. One policy covered a 1958 Ford sedan and the second policy covered a 1953 Chevrolet truck, both vehicles being owned by C. A. Wilkes, and the liability under each policy was limited to $10,000 for injury to any one

person and $20,000 for each accident. Galloway obtained a judgment against the said insurance company on the policy covering the 1958 Ford, which judgment was paid with interest. Galloway then brought an action against the insurer for $10,000 and obtained a judgment for that amount under the policy covering the Chevrolet truck to be applied against the $100,000 judgment against Raymond Wilkes.

The insurance company appealed and the judgment was affirmed. The controversy on appeal in *Galloway* concerned a clause as to "other insurance" contained in the policy upon which the second $10,000 judgment was obtained. This clause provided that if the insured, C. A. Wilkes, had "other insurance" against a loss covered by the policy the insurer "shall not be liable under this policy for a greater portion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, howeveh, the insurance with respect to * * * other automobiles * * * shall be excess insurance over any other valid and collectible insurance."* (Emphasis supplied.)

In *Galloway,* the insurance company contended that since the insured, C. A. Wilkes, had other insurance (the policy covering the 1958 Ford) against the loss, the insurer's liability under the Chevrolet policy had been discharged by the payment of the $10,000 judgment on the Ford policy. The court observed that this contention obviously was based upon the unsound premise that the "loss" to which the two policies were applicable did not exceed $10,000. Galloway contended that the insurer's liability here is controlled by the proviso appearing at the end of the "other insurance" clause. The South Carolina court held that the quoted proviso was not ambiguous, and was clearly applicable. "The loss to which the policy is applicable, i. e., the plaintiff's judgment in the amount of $100,000.00, exceeds the amount of all other insurance against such loss; the

driver of the automobile, whose recklessness caused the loss, was an 'insured' under the policy; the driver was operating an automobile other than that of the named insured, C. A. Wilkes, described in the policy; and by the plain language of the proviso relating to such other automobiles the coverage is 'excess insurance.'" 147 S.E.2d at 273.

Having reached a decision, the court extended its discussion and Allstate points to the following quotation as particularly apposite to the instant case. It was stated, 147 S.E.2d at 273:

"Appellant [insurer] may not, and indeed does not, invoke the pro-rata provision of the 'other insurance' clauses *with respect to Tolson's policy*, because that policy was the primary coverage and liability thereunder was not on a parity with liability under appellant's policy, which was excess insurance, was not identical in scope with the former, and did not come into operation until the former had been exhausted. *Coinsurance of the same risk is prerequisite to the right of contribution among insurers.*" (Emphasis supplied.)

The only South Carolina case cited in support of the italicized portion of the foregoing quotation is the case of Laurens Federal Savings & Loan Ass'n v. Home Ins. Co. of New York, 242 S.C. 226, 227, 130 S.E.2d 558. In view of the statement that the insurance company did not invoke the pro rata provision of the "other insurance" clauses, the court's subsequent comments would appear to be no more than dicta. The court stated that the pro rata provision would not apply because the policies were not "identical" in scope, Tolson's was the primary policy, and the two policies issued to Wilkes were secondary. It was at this juncture that the court made its statement that coinsurance of the same risk is a prerequisite to the right of contribution.

Coinsurance problems have usually arisen in South Carolina cases involving fire insurance policies issued to parties with differing interests, such as mortgagor and mortgagee. In such instances the South Carolina Supreme Court has held that an insurer who had issued a policy to a party having only an equitable interest had no right of contribution from the insurer of the legal interest. Laurens Federal Savings & Loan Ass'n v. Home Ins. Co., supra; Murdaugh v. Traders & Mechanics Ins. Co., 218 S.C. 299, 62 S.E.2d 723 (1950); but see Edwards v. Great American Ins. Co., 234 S.C. 404, 108 S.E.2d 582 (1959). However, where the same party in interest has procured several fire insurance policies covering the same risk proration will be permitted, provided the insured has otherwise complied with the terms of the policies. Wynn v. Caledonian Ins. Co., 100 S.C. 47, 84 S.E. 306 (1915); Cave v. Home Ins. Co., 57 S.C. 347, 35 S.E. 577 (1900). See Graham v. American Eagle Fire Ins. Co., 182 F.2d 500 (4 Cir. 1950).

In the instant case we are of the opinion that there was the equivalent of coinsurance of the same risk insofar as Allstate and Canal are concerned. The requirement for contribution is that the insurers must have insured the same risk and interest, or, as it has been stated, there must exist a common liability upon the same obligation. 29A Am.Jur., Insurance § 1718, p. 796. Here there is a common liability shared by Vance and Forrester and, by the same token, by Allstate and Canal. The policies here involved were issued to protect the respective trucking companies against claims such as those arising out of the accident. In this respect both policies insure the same risk against the same event. The anomaly here arises from the fact that Burgess, the agent and servant of both of the insureds, was not covered by either contract of insurance at the time of the accident. However, both Vance and Forrester are liable in tort for the injuries caused by Burgess and each policy protects the insured named therein against all sums which

it is legally obligated to pay within policy limits. Since Vance has contracted for greater protection, its insurer, Allstate, is liable in proportion to the amount which the protection it provided bears to the total protection provided by both policies.

Affirmed.