## 11936

### ATKINSON *ET AL.* v. UNITED STATES FIRE INS. CO.

(131 S. E., 781)

1. INSURANCE—OWNER'S POLICY IS NOT VITIATED BECAUSE OF ADDITIONAL INSURANCE EFFECTED BY MORTGAGEE WITHOUT HIS KNOWLEDGE.—Mortgagee has right to take out insurance for his protection, and, if he should do so without owner's knowledge, owner's policy is not vitiated under forfeiture clause for additional insurance.

2. INSURANCE—NO LIABILITY ATTACHES ON POLICY ISSUED TO MORTGAGEE ON UNDERSTANDING THAT IT SHOULD BE CANCELED IF OWNER TOOK OUT INSURANCE; OWNER HAVING TAKEN INSURANCE IN ANOTHER COMPANY.—Where mortgagee, believing owner did not intend to take out insurance, ordered policy with express understanding that, if owner should take out insurance, policy was to be canceled, *held* such policy was not intended to continue in force after owner had insured premises in another company, and no liability attached thereto.

Before WILSON, J., Florence, May, 1924. Reversed and remanded.

---

NOTE.—Procuring of insurance by mortgagor as a violation of provision in policy of mortgagor against other or additional insurance, see note in L. R. A., 1917-A, 607.

Action by C. F. Atkinson and another against the United States Fire Insurance Company. From a judgment for plaintiffs, defendant appeals.

*Messrs. Jos. L. Nettles* and *Stephen Nettles,* for appellant, cite: *Party not entitled to recover on insurance policy he had not authorized:* 127 S. E., 367. *Mutual mistake preventing meeting of minds:* 6 R. C. L., 620; 1 Cooley's Briefs, 550. *Court should determine ultimate rights of parties between themselves:* Code Civ. Pro., 1922, Sec. 597.

*Messrs. Speers & Want* and *W. Marshall Bridges,* for respondents, cite: *Insurable interest of mortgagor and mortgagee distinct:* 6 F. (2nd), 533; 4 F. (2nd), 142; 2 Cooley's Briefs on Insurance, 1837 et seq.; 4 Cooley's Briefs on Insurance, 3700; 6 Cooley's Briefs on Insurance, 598; 26 C. J., 189. *Mortgagor entitled to benefits from policy issued to mortgagee in excess of mortgage debt:* 4 Cooley's Briefs on Insurance, 3701. *Issuance of policy to mortgagee without inquiry as to other insurance waives co-insurance clause:* 26 C. J., 319. *Liability of insurance company to mortgagees:* 97 S. C., 189. *Representations by mortgagor do not affect policy of mortgagee:* 4 Cooley's Briefs on Insurance, 3701. *Liability on two or more policies on same property:* Civ. Code, 1922, Secs. 4095 and 4096.

March 8, 1926.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This appeal questions the correctness of an order of his Honor, Judge Wilson, Circuit Judge, presiding over the Court of Common Pleas in Florence County, directing a verdict in favor of the plaintiff for $1,800 against the defendant in an action upon a fire insurance policy covering a dwelling house in the Town of Timmonsville, which belonged to one H. G. Watford, and which was destroyed by fire on December 26, 1921.

It appears that Watford, on about December 15, 1921, purchased a house and lot in the Town of Timmonsville (stated by counsel for the respondent, in the Town of Lamar). He owed against the purchase price of the lot $2,000 to the plaintiffs C. F. Atkinson and Duncan McKenzie; the indebtedness being secured by a mortgage covering the house and lot.

About the time of the purchase of the lot Watford applied to one R. C. Rollins, the agent of the United States Company (defendant-appellant), for $3,000 insurance on the dwelling house. The former owner had previously been carrying $2,000 of insurance through the agency of Rollins on the house. Rollins was unwilling to issue more than $2,000 of insurance, and referred Watford to the agent of another company. Watford then stated, in substance, to Rollins that, if he could not procure $3,000 on the house, he would not take any—would be his own insurer. Rollins, who was cashier of the bank of which McKenzie was president, knowing of the mortgage held by McKenzie and Atkinson, reported the conversation between himself and Watford to them, and of his decision not to take out any insurance. McKenzie then told Rollins to write up a policy for $2,000 on the house, making the loss payable to himself and Atkinson, mortgagees, as their interest might appear. Rollins accordingly did so on December 22, 1921. He did not deliver the policy to the mortgagees, but held it among his papers with the expectation of a future settlement, and with the distinct understanding with McKenzie that, if Watford changed his mind about taking out insurance, and took out a policy payable to the mortgagees, the policy in the United States Company which Rollins had written up and retained in his possession should be canceled.

The dwelling house, as stated, was destroyed by fire on December 26, 1921, and it then developed that Watford had, on December 20, about five days after he had had the conversation above referred to with Rollins, and two days

before Rollins had written up the policy of $2,000 in the United States Company, applied to the agent of another company, the Fidelity Fire Insurance Company, and obtained a policy of $3,000 on the house, with a similar loss payable clause in favor of McKenzie and Atkinson, mortgagees. About 10 days after the fire, Rollins, in pursuance of his agreement with McKenzie, canceled the policy which he had written up on December 22d.

An affidavit of Watford, dated March 22, 1922, contains an exceedingly clear statement of the facts above detailed:

"At the time of said transfer I took the matter of insurance on said dwelling up with Mr. R. C. Rollins, and he told me that he would not insure the property any longer due to the fact that it was mortgaged, and advised me to see another agent if I wanted any insurance thereon. I advised Mr. Rollins at that time that I would not carry any insurance on the property.

"A few days later I called to see Mr. Carter, another insurance agent, and, after discussing the matter with him, requested that he write $3,000 insurance on the dwelling, naming the mortgagees to whom the policy was to be made payable.

"The above-mentioned insurance was the only insurance I wanted on the property, and the only insurance that I knew was on the property. I paid the premium required by Mr. Carter at that time, and secured a policy in the Fidelity Fire Insurance Company.

"If Mr. R. C. Rollins ever issued any insurance on this property after it had been purchased and transferred to me, I knew nothing of such insurance, paid no premium to him for same, and, furthermore, make no claim against any other company that may have had a policy on this property.

"The dwelling mentioned above was destroyed by fire December 26, 1921, about 8 a. m. I reported the matter to Mr. Carter, and have made claim against the Fidelity Fire Insurance Company whose contract of insurance I hold. I

have made no claim against any other company for any loss to the said dwelling, and do not feel that I have any other insurance on the said property other than the above-mentioned contract with the said Fidelity Insurance Company of Sumter, S. C."

The Fidelity Company claimed that there were two policies upon the house; its own for $3,000, and that of the United States Company for $2,000; and that it was liable only for 60 per cent. of the loss, $1,800, and the other company for $1,200. The United States Company contended that its policy of $2,000 was written up by its agent under a specific agreement that, in the event that Watford had taken out other insurance to protect himself and the mortgagees, the policy of $2,000 in the United States Company should be canceled, and that for that reason it had assumed no liability upon its policy for the loss.

On September 12, 1922, Watford, McKenzie, and Atkinson instituted an action against the United States Company upon the $2,000 policy which had been written up by Rollins; and on December 13, 1922, the same parties instituted an action against the Fidelity Company upon the $3,000 policy which had been issued by its agent to Watford, the premium on which had been paid by Watford and the policy delivered to him.

The United States Company set up two defenses in its answer:  (1) That its policy was issued under the agreement above referred to; and (2) that under the mortgage clause in the policy, if it should be held liable to the mortgagees, it had the right of subrogation to the securities held by the mortgagees against the mortgagor.

The Fidelity Company set up two defenses in its answer: (1) That the policy issued by it was forfeited by the act of the insured in having issued additional insurance without its consent; and (2) that, if liable, it could only be for such proportion of the amount of insurance permitted, $3,000, as the total amount of the two policies, $5,000, bore to the amount of its policy, $3,000—60 per cent., $1,800.

Both cases being down for trial at the May term, 1924, the presiding Judge, without objection, ordered that they be tried together, and they were so tried. When the cases were called for trial, the counsel for the plaintiffs moved for an order amending the complaint in the case against the United States Company by striking out the name of Watford as one of the plaintiffs and amending the allegations of the complaint to correspond with the change of parties, stating that the joinder of Watford as a party plaintiff was made by mistake. The motion was granted. The trial then proceeded with the mortgagees McKenzie and Atkinson being the plaintiffs in the case against the United States Company, and the mortgagor, Watford, and the mortgagees being the plaintiffs in the case against the Fidelity Company.

As to this matter, counsel for the respondents say in their printed argument:

"The action on the policy issued by Fidelity Fire Insurance Company was brought in the names of Watford, Atkinson and McKenzie, as plaintiffs. In the case against the United States Fire Insurance Company the same parties were named as plaintiffs, but this was obviously an inadvertence on the part of the pleader, for Watford had no interest in the policy, and no knowledge of it until after the fire, and was neither morally nor legally entitled to enforce it. These facts having been clearly developed at the trial, the name of Watford was stricken from the pleadings in the case of the United States Fire Insurance Company, and the case proceeded with only Atkinson and McKenzie as plaintiffs."

The testimony tended to establish the facts as above stated, as to which there appears to be no controversy.

At the close of the testimony it appears that Mr. Moise, the counsel for the Fidelity Company, made a motion for directed verdicts in favor of the plaintiffs against his company, the Fidelity, for $1,200, and against the United States Company for $1,800, upon the theory that the two policies

of $3,000 and $2,000, respectively, were concurrent, and each company was liable for such proportion of the amount of insurance permitted, $3,000, as the total amount of insurance upon both policies, $5,000, bore to the amount of its policy; that is, the Fidelity Company for 60 per cent. of $3,000, $1,800, and the United States Company for 40 per cent. of $3,000, $1,200.

At the same time Mr. Nettles, counsel for the United States Company, made a motion for a directed verdict in favor of that company upon several grounds, only one of which need be considered; namely, that no liability attached to said company by reason of the agreement between the agent and the mortgagees above referred to and of the fact that Watford had taken out insurance protecting the mortgagees with the Fidelity Company.

It does not distinctly appear in the record for appeal that Mr. Want, the counsel for the plaintiffs, joined in the motion made by Mr. Moise, although this statement does appear in the "case":

"The Court granted the motion of Mr. Moise and Mr. Want and directed a verdict in favor of the plaintiffs Watford, Atkinson and McKenzie against the Fidelity Fire Insurance Company in the sum of $1,800 (no interest being allowed by the Court upon statement of plaintiffs' attorneys that they did not request such). The Court also directed a verdict in favor of the plaintiffs Atkinson and McKenzie against the appellant in the sum of $1,389, being $1,200 principal and $189 interest."

The motion of Mr. Nettles was of course refused, in view of this order.

Judgments were duly entered upon the verdicts so directed, and from that entered upon the verdict of $1,389 against it the United States Insurance Company has appealed. .

It does not appear that the plaintiffs have appealed from the order directing a verdict for $1,800 against the Fidelity

Company, and it may be assumed that that company has paid off the judgment entered thereupon, as they may well have been delighted to do, though to whom we have no means of ascertaining.

It is worthy of notice that the mortgagor Watford, having disclaimed all interest in the policy in the United States Company, and upon his own motion having been eliminated from the action against that company, the judgment below was in favor of the mortgagees alone, and this appeal concerns the rights and obligations of the United States Company and the mortgagees alone. The mortgagees then alone having any interest in the United States Company policy were entitled to a directed verdict upon the theory of concurrent insurance only by showing that at the time of the fire both policies were in force. There is no question but that the Fidelity policy was in force. It was applied for by Watford on December 20th, 6 days before the fire. It was paid for by him and delivered to him; the loss made payable, at his request, to the mortgagees. As to the United States policy, the testimony of Atkinson and of McKenzie, the mortgagees, and of Rollins, the insurance agent, leaves no room for doubt that the United States policy was written up with the distinct understanding that, if it should appear that Watford had taken out insurance for the protection of the mortgagees, there would be no necessity for having two policies to subserve the same purpose, and that the United States policy should be canceled. We lay no stress upon the fact that the policy had not actually been paid for and delivered to the mortgagees and was retained by the agent. Doubtless, considering the relations between Rollins and the mortgagees, and their custom in handling such matters, the policy would be deemed to have been delivered.

The testimony of Rollins is clear, explicit, uncontradicted, and strongly corroborated by Atkinson and McKenzie. The substance of it is given above. Atkinson testified that, if he had known that Watford had already taken out a

policy in the Fidelity, he would not have asked Rollins to write the United States policy. The other mortgagee, McKenzie, testified to the same effect, and that he was under the impression that Watford was not going to take out any insurance at all on the house; that that fact induced him to ask Rollins to write the United States policy; that, if he had known at that time that Watford had taken out the Fidelity policy, he would not have asked Rollins to write the other; that he "expected" that the moment Watford had other insurance his interest in Rollins writing insurance would cease.

It appears that Watford knew nothing about the policy in the United States Company, and also that the mortgagees knew nothing about the policy in the Fidelity, so that it conclusively appears that the thought and purpose of concurrent insurance never entered the mind of either.

There can be no question as to the correctness of the 1, 2 proposition relied upon by the respondents that the mortgagee has a right to take out insurance for his protection, and that, if he should do so, without the knowledge of the owner, the owner's policy will not be vitiated under the forfeiture clause of additional insurance. But that is not the turning point in this case; it is whether the United States policy was intended by the parties to continue in force notwithsanding the previous policy in the Fidelity. There can be no doubt of the issue on this point where no other reasonable inference can be drawn from the evidence than that the contrary was intended.

The judgment of this Court is that the judgment of the Circuit Court be reversed and that the case be remanded to that Court for the entry of judgment in favor of the defendant under rule 27.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS, BLEASE and STABLER concur.