## 16437

MURDAUGH v. TRADERS & MECHANICS INS. CO.

(62 S. E. (2d) 723)

300

*Messrs. Williams & Busbee,* of Aiken, *for Appellant,*

*Messrs. Lybrand & Simons,* of Aiken, for *Respondent,*

November 28, 1950.

LIDE, Acting Associate Justice.

This action was originally brought by James Murdaugh, as plaintiff, against Traders & Mechanics Insurance Company, as defendant; for the recovery of the amount of a fire insurance policy, with interest, in the Court of Common Pleas for Aiken County, resulting in a judgment in favor of the plaintiff for the full amount claimed. The case comes before us upon the appeal of the defendant from this judgment. Pending the appeal, the plaintiff, James Murdaugh, died intestate, and the cause was continued in the name of Essie Murdaugh, as administratrix of his estate. However, James Murdaugh will hereinafter generally be referred to as the plaintiff, and the appellant as the defendant or the defendant company.

This case came on for trial before Hon. William H. Grimball, Judge of the Ninth Circuit, then presiding in the Second Circuit, and was by agreement of counsel tried before him, without a jury, upon an agreed statement of

the testimony, there being no substantial dispute as to the facts of the case. And in due course the Presiding Judge filed his decree, dated June 14, 1949, ordering that the plaintiff have judgment against the defendant in the amount of the policy, to wit, $800.00, "together with interest thereon at the legal rate since the date of the fire, to wit, October 16, 1946, together with the costs of this action".

The plaintiff, James Murdaugh, was the owner of a certain lot in the City of Aiken upon which his dwelling house was situate; and on the 10th day of April, 1946, the defendant Company, through its Aiken agency known as Lyon-Croft Mutual Insurance Agency (a partnership consisting of two sisters, Mrs. F. Ella Croft and Mrs. Mary C. Lyon) issued the policy of fire insurance in question here to the plaintiff, James Murdaugh. The policy is a *standard policy* insuring the property of James Murdaugh for the term of one year from April 10, 1946, to April 10, 1947, against all direct loss by fire, etc., the premium of $7.52 being duly paid by the insured; and the policy states the agreed value of the building as being $800.00, and the total agreed insurance allowed on the building likewise as being $800.00. The policy also contained the usual mortgage clause, providing that the loss, if any, on the building, should be payable to F. Ella Croft, the mortgagee. However the mortgages which were held by Mrs. Croft were paid and satisfied prior to the occurrence of the fire hereinafter mentioned.

On or about the first day of August, 1946, the plaintiff, James Murdaugh, being in need of money, especially because of the illness of his wife, applied to the First Federal Savings and Loan Association, of Augusta, Georgia, for a loan of $1,500.00, out of which the mortgages held by Mrs. Croft were to be paid, and were subsequently paid. His application was approved, and on August 5, 1946, he executed a mortgage on his property to the Association in order to secure the sum of $1,500.00. The transaction in behalf of the Association appears to have been handled by Mr. Theo

F. Balk, Executive Vice-President and Treasurer thereof. We quote the following from the testimony of Mr. Balk relating specifically to the insurance on the property:

"At the time the loan was closed Murdaugh also advised that he had a small insurance policy over his residence with the Lyon-Croft Agency in Aiken. I told him that it would be necessary to carry $1,500.00 insurance over his property and to go to his agency in Aiken and increase his insurance to $1,500.00 for fire and extended coverage insurance, and to bring or send said policy to the Association.

"On September 18th, since we had heard nothing further from Murdaugh concerning his insurance policy since the time of the closing of his loan, the Association instructed Sanford and Corbitt, Agents for the Monarch Fire Insurance Company, to place a binder for $1,500.00 insurance on the property in order that the Association would be protected in the event of a loss. At this time Sanford and Corbitt were advised that they might possibly not be privileged to write any or all of this insurance in the event that the mortgagor, James Murdaugh, had acquired or had sufficient insurance to protect the Association. The Association requested this binder from the Monarch Fire Insurance Company on September 18th without consultation with James Murdaugh and without his knowledge that same was being done. *The binder was requested solely for the purpose of the protection of the Association.*" (Emphasis added.)

Mr. Balk further says in the course of his testimony:

"From the time of the closing of Murdaugh's loan on August 5th to the time that his house was destroyed by fire on October 16th, 1946, the Association heard nothing from Murdaugh as to what he had done about increasing his insurance over his house, and to my knowledge Murdaugh was not advised and had no knowledge of the fact that we had requested a binder for $1,500.00 with the Monarch Fire Insurance Company"

The plaintiff, pursuant to the directions of the Association through Mr. Balk, called on Mrs. Lyon, of the Lyon-Croft Mutual Insurance Agency, in Aiken, and asked her to increase his policy to $1,500.00 as he was getting a loan from the Association, but she informed him that she could not increase the policy (quoting) "as in her opinion my house was not worth any more than $800.00". And we also quote the following from his testimony:

"After she told me this I went on back to work and didn't do any more about my insurance until my house was destroyed by fire on the morning of October 16, 1946. On this date my house burned down and my granddaughter was burned up with the house. I went by Mrs. Lyon's office and told her that my house had burned and asked for payment of the $800.00, which was the amount of the insurance I had with her over the house. Some time later I received a registered letter telling me that Mrs. Lyon's company refused to pay the amount of the loss and offered to return to me the premium of $7.52 which I had paid." (But he refused to accept the return of the premium).

We also quote the following from plaintiff's testimony:

"From the time my loan was closed on August 5, 1946, to the time my house was burned on October 16, 1946, I did not see, talk, or have any communication of any kind with Mr. Balk or the Association concerning my insurance. I did not advise them that Mrs. Lyon would not increase my insurance from $800.00 to $1,500.00, and neither did I ask or authorize the Association to increase my insurance and I know nothing at all, of my own knowledge, as to what they might have done concerning more insurance."

In consequence of what we have just stated this action was commenced on May 17, 1947, by the plaintiff, James Murdaugh, against the defendant, Traders & Mechanics Insurance Company, to recover the full amount of his policy with interest, the complaint being in the usual form. The defendant answered admitting the issuance of the policy, and

admitting that in December, 1946, it had advised the plaintiff of its denial of liability on the policy and its refusal to pay the amount of loss, and that it tendered the amount of the premium, $7.52, to the plaintiff, which he had refused. There were also two affirmative defenses set up in the answer, one of which may be briefly stated as being to the effect that the insurance in the sum of $1,500.00 obtained by the First Federal Savings and Loan Association, by way of a binder, from the Monarch Fire Insurance Company, was in violation of the policy issued by defendant, and hence that the defendant was not liable under its policy. The third defense was to the effect that even if the defendant were liable "for any sum whatsoever, which it denies", its liability could not exceed the sum of $278.26, as its pro rata share of the whole insurance, on the basis of the policy and the binder, the policy having been issued by it and the binder by the Monarch Company.

The trial Judge held in and by the decree hereinbefore mentioned that the insurance taken out by the mortgagee, solely for its protection, constituted no violation of any of the conditions of the policy issued by the defendant Company; and furthermore, that Section 7977, Code 1942, relating to contributive or pro rata insurance was in nowise applicable to this case; and that consequently the plaintiff was entitled to the full amount of his insurance with interest and costs.

There are five exceptions filed by the defendant, but in its brief they are reduced to three questions. However, the third question, which alleges that the Court erred "in holding that appellant admitted that at the time of the fire its policy was in full force" will not require any extended discussion. It is true that the first sentence of the second paragraph of Judge Grimball's decree reads as follows "In its Answer the defendant admits that its policy above mentioned was in full force and effect at the time of the said fire". This sentence, while somewhat inaccurate,

was, in our opinion, not at all prejudicial to the defendant, because its defenses are set out in the decree of the Court in great detail, and were manifestly duly considered. Evidently the trial Judge merely intended to say that the defendant Company admitted the issuance of the policy and that at the time the fire occurred the one-year term of the policy had not expired.

The other two questions raised by the defendant will be considered in their order, the first being as follows:

*"(1) Was the Monarch policy substituted for and in the place of the policy of the appellant, insured thereby canceling and abandoning appellant's policy, or knowingly obtained, did not Monarch policy annul appellant's policy?"*

This question states the theory of the defendant to the effect that the insurance taken out by the Association in the Monarch Company, although solely for the protection of the mortgagee, was substituted for and in place of the defendant's policy, and that defendant's policy was thereby annulled. However, there could be no such substitution in the absence of an agreement to that effect by the parties in interest. And we can find no evidence whatsoever in the record of any such agreement, either expressly or by implication. Furthermore, we are of opinion that the plaintiff, James Murdaugh, neither by what he did, nor by what he failed to do, violated any of the conditions of his policy relating to the amount of insurance permitted on his dwelling house. As will be seen by reference to the quotations hereinbefore made from the testimony, the plaintiff was told by Mr. Balk, the executive officer of the Association, that it would be necessary to carry $1.500.00 insurance over his property because of his mortgage to the Association, and that he should go to his Aiken agency and have them increase the insurance to that extent, "and to bring or send said policy to the Association."

The plaintiff complied with this request to the extent of seeking to have the Aiken agency increase his insurance, but,

as above stated, they refused to do so. It is true that the plaintiff did not report this matter to the Association, but as stated in Judge Grimball's decree, he was "an elderly colored man, who obviously did not realize the importance of procuring additional insurance". But at all events, we are of opinion that this did not and could not affect the defendant Company's liability under its policy. In fact, the rights of the Association with reference to insurance are covered by the mortgage executed to it by James Murdaugh, for the testimony of Mr. Balk shows that this mortgage contains the usual insurance clause, as follows:

"And it is agreed by and between the said parties, that said mortgagor, his heirs, executors or administrators, shall and will forthwith insure the house and buildings on said lot and keep the same insured from loss or damage by fire, and assign the policy of insurance to said First Federal Savings and Loan Association, its successors or assigns, and in case he or they shall at any time neglect or fail so to do, then the said mortgagee, its successors or assigns, may cause the same to be insured in its own name and reimburse itself for the premium and expenses of such insurance under the mortgage."

This clause in effect authorized the Association to take out insurance solely for the purpose of its protection; and the authority thus given merely confirms the authority given by law. Indeed, we think that the defendant overlooks the fact that the owner's interest in insured property and the mortgagee's interest therein are separate and distinct for insurance purposes.

The following quotation from 29 Am. Jur., page 569, section 735, correctly states the established rule:

"It is well settled that since a mortgagor and mortgagee each have a separate and distinct insurable interest in the mortgaged property, separate insurance procured by the mortgagee or his representative for his own protection entirely does not constitute a breach of the condition in the

mortgagor's policy against other or additional insurance, even though that policy is primarily payable to the mortgagee."

And in conformity with this principle it was held in our own case of *Atkinson v. United States Fire Ins. Co.,* 134 S. C. 1, 131 S. E. 781, 783, as follows: "There can be no question as to the correctness of the proposition relied upon by the respondents that the mortgagee has a right to take out insurance for his protection, and that, if he should do so, without the knowledge of the owner, the owner's policy will not be vitiated under the forfeiture clause of additional insurance."

The evidence in the case before us is clear beyond controversy that the insurance taken out by the Association as mortgagee was manifestly without the knowledge of the owner, James Murdaugh.

Referring again, however, to defendant's theory of substitution based upon the view that it may be inferred that there was an implied agreement between the insured and the Association (through Mr. Balk), pursuant to which the insurance in the Monarch Company which he took out would operate to cancel the plaintiff's own policy, we find no basis for any such inference in the testimony. On the contrary, we think the testimony completely refutes such an inference.

The case of *De Shields v. Ins. Co. of North America,* 125 S. C. 457, 118 S. E. 817, 820, in which the opinion was delivered by Mr. Justice Marion, is in point here, although it related to insurance upon an automobile, for it was therein held, among other things, that a provision in a conditional sales contract (really a mortgage contract) of an automobile, requiring the buyer (mortgagor) to keep the car insured for not less than the amount due, and authorizing the seller (mortgagee) to "place, continue, and renew insurance for the buyer (mortgagor) if the seller (mortgagee) so elects", did not create the relationship of principal and

agent, so as to charge the buyer (mortgagor) with knowledge of additional insurance. The Court says:

"The contention is apparently rested on the theory that that the insurance clause in the mortgage contract created the relationship of principal and agent, and that the knowledge of the mortgagee in obtaining insurance, pursuant to the authority granted, was the knowledge of an agent which was imputable to the mortgagor as principal. We do not think that position is tenable."

It was further held in this case that additional insurance taken out by the mortgagee (or its assignee) without the knowledge of the mortgagor, or covering only the insurable interest of the mortgagee, would not operate as a violation of the original insurance policy.

This brings us down to the second question raised by the defendant, which is as follows:

"(2) If there was not a complete substitution, cancellation and abandonment, did the Court err in not holding that appellant could be held liable only for its pro rata of the agreed value of the house destroyed?"

It is quite true that Section 7977, Code 1942, would be deemed as forming a part of the insurance policy issued by the defendant Company, and the same provides that two or more policies "written upon the same property" shall be deemed and held contributive insurance, and if the aggregate sum thereof exceeds the agreed insurable value, each company in the event of loss "shall be liable for its pro rata share of said insurance". But it will be observed that the policies must be "written upon the same property"; and evidently the word "property" connotes the same *interest*. The rule is succinctly and accurately stated in the opinion of this Court delivered by Mr. Justice Oxner in the rather recent case of *Lucas v. Garrett,* 209 S. C. 521, 41 S. E. (2d) 212, 214, 169 A. L. R. 660, as follows:

"Without undertaking to give an all-inclusive definition of concurrent insurance, all the authorities agree that as a

prerequisite to enforcing contribution between insurers, it is essential that both policies insure the same interest against the same casualty. 46 C. J. S., Insurance, p. 150, § 1207; 29 Am. Jur., Section 1334, page 998."

The rule as stated in 29 Am. Jur., page 998, Section 1334, is also, we believe, directly applicable here:

"Contribution between insurers cannot be enforced unless their policies cover the same interest. Accordingly, if an owner and a mortgagee of the same property have procured insurance on their separate interests therein, and the owner seeks to recover on his policy, the defendant insurer is not entitled to contribution against the insurer of the mortgagee's interest."

Counsel for the defendant cite as favorable to their views our own cases of *Wynn v. Caledonian Ins. Co.*, 100 S. C. 47, 83 S. E. 306, and *Cave v. Home Ins. Co.*, 57 S. C. 347, 35 S. E. 577; and the recent South Carolina case decided by the United States Circuit Court of Appeals for the Fourth Circuit, (opinion delivered by Judge Parker), to wit, *Graham v. American Eagle Fire Ins. Co.*, 182 F. (2d) 500. These cases all relate to additional insurance taken out by the *owner* of the property; and in none of them was any such additional insurance taken out by a *mortgagee*. Hence we are of opinion that these cases are not apposite.

All the questions raised by the appellant are answered adversely to its contentions, and all of its exceptions are likewise overruled. The well considered decree of the Circuit Court is therefore,

Affirmed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.