665 S.E.2d 608

Sandra BLANDING, Appellant,

v.

LONG BEACH MORTGAGE COMPANY, Washington Mutual, Inc., Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust, Respondents.

No. 4387.

Supreme Court of South Carolina.

Submitted May 1, 2008.
Decided May 6, 2008.
Withdrawn, Substituted and Refiled July 21, 2008.
Rehearing Denied July 21, 2008.

Jay J. Hulst, of Moncks Corner, for Appellant.

Tina Cundari and Elizabeth Van Doren Gray, both of Columbia, for Respondents.

HUFF, J.:

In this declaratory judgment action involving insurance proceeds, Sandra Blanding appeals the master's grant of summary judgment in favor of Long Beach Mortgage Compa-

ny, Washington Mutual, Inc., and Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

The present case arises out of a dispute regarding the parties' rights with respect to casualty insurance proceeds paid for foreclosed property owned by Sandra Blanding. In February 2003, Blanding executed and delivered a mortgage for $40,000 to Money First Financial Services, Inc., for the purchase of a manufactured home. The mortgage was secured by real property located in Berkley County, South Carolina, to which the manufactured home was permanently attached. Shortly thereafter, the mortgage was assigned to Long Beach Mortgage Company, a wholly owned subsidiary of Washington Mutual, Inc. Approximately one year later, in January 2004, the mortgage was assigned to Deutsche Bank National Trust Company, as trustee for Long Beach Mortgage Loan Trust 2003–4.[2]

As the borrower, Blanding was required to maintain insurance on her property which named Lender as mortgagee and/or as an additional loss payee. Specifically, the mortgage requires as follows:

**Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire.... All insurance policies required by Lender and renewals of such policies ... shall name Lender as mortgagee and/or as an additional loss payee.

Additionally, the mortgage provides: "[i]f Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense." The mortgage further states that in the event of loss:

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Collectively, Long Beach Mortgage Company, Washington Mutual, Inc. and Deutsche Bank National Trust Company are the lender and defendants in this case (hereinafter "Lender").

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance proceeds were required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.... If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Finally, the mortgage provides that attorneys' fees incurred in "a legal proceeding that might significantly affect Lender's interest in the property and/or rights under this Security Instrument" shall become the additional debt of Blanding as the borrower.

In August 2004, Blanding purchased a home insurance policy from Foremost Insurance Company (Foremost). The policy issued by Foremost provided for $63,000 worth of coverage on Blanding's residence and named Washington Mutual as the lienholder. In addition, the policy included an "other insurance" clause providing "[i]f both this and other insurance apply to a loss, [Foremost] will pay our share. Our share will be the proportionate amount that this insurance bears to the total amount of all applicable insurance." In November 2004 Lender, apparently under the misapprehension that Blanding had not obtained coverage on the property as required, obtained an insurance policy from American Security Insurance Company (American Security) providing $48,000 worth of coverage on Blanding's property. The American Security policy also included an "other insurance" clause which states "[i]f there is any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted."

On December 7, 2004, the Master-in-Equity issued an order finding Blanding failed to make payments due as provided on the note. He ordered Blanding's mortgage be foreclosed and the property sold at public auction. At the time of foreclosure, the total debt due on the mortgage, including interest, escrow adjustments, late charges, costs, and attor-

neys' fees, was $51,995.14. On January 1, 2005, prior to the foreclosure sale, Blanding's residence was destroyed by fire. On January 5, 2005, the property was sold at public auction to Lender for $2,500.

On January 31, 2005, American Security issued a check to Washington Mutual Bank in the amount of $22,403.91 for losses arising out of the fire. Thereafter, on May 27, 2005, Foremost issued a check in the amount of $62,750 [3] made payable to Blanding and her attorneys, as well as Washington Mutual and Deutsche Bank. When Lender discovered proceeds were issued under the Foremost policy, Lender returned the $22,403.91 to American Security based on its determination it was required to do so under the terms of the policy. The parties disagreed as to their rights to the Foremost proceeds, with Lender asserting these proceeds were to be applied first to the full amount of Blanding's debt due on the mortgage.

Blanding filed this declaratory judgment action on November 10, 2005 asserting Lender failed and refused to apply the other insurance proceeds paid in connection with the loss, and claiming she was entitled to an accounting of her debt and application of "any and all insurance proceeds paid or payable to or received by [Lender]." Lender answered and counterclaimed, asserting the American Security policy applied only "as excess and in no event as contributing," and it was therefore entitled to receive from Blanding the amount of the debt at the time of foreclosure, less the $2,500 received in the foreclosure sale, together with prejudgment interest and attorneys' fees. Blanding replied to Lender's counterclaim, maintaining she was entitled to a set-off or credit for insurance proceeds received by Lender, including those returned to American Security. She further generally denied Lender's counterclaim for prejudgment interest and attorneys' fees, and asserted her own right to recover attorneys' fees and costs.

The matter was referred to the Master–in–Equity by order dated January 27, 2006. Subsequently, both Blanding and

---

3. The check initially issued by Foremost, in the amount of $62,750, represents the total amount of coverage less the $250 deductible. Later, when the initial check expired and Blanding requested a new one, Foremost issued a check in the amount of $63,000, instead of $62,750.

Lender filed motions for summary judgment seeking a determination of the parties' rights with respect to the casualty insurance proceeds paid for Blanding's foreclosed property. Blanding argued she was entitled to have the proceeds from the American Security policy credited toward her debt and she was therefore due $35,908.77 from the Foremost proceeds, while Lender was entitled to only $27,091.23. In the alternative, Blanding maintained the excess "other insurance" clause in the American Security policy was void as a matter of law, and therefore the American Security coverage was contributive insurance. Under this application, Blanding claimed entitlement to a credit of $27,216, leaving a balance due to Lender of $22,279.14 and $40,720.86 due Blanding from the Foremost proceeds. Lender asserted the American Security policy provided excess coverage only, and that Blanding was seeking to recover insurance proceeds to which she was not entitled and had refused to endorse the Foremost check to allow the proceeds to be applied to her debt. Accordingly, Lender maintained it was entitled to recover prejudgment interest and attorneys' fees incurred in the current litigation. Blanding argued Lender was not entitled to attorneys' fees as the mortgage had been released, and any obligations under the mortgage agreement were therefore terminated.

Upon consideration of the cross-motions for summary judgment, and following a separate hearing on attorneys' fees, the Master ruled Lender was "entitled to be paid for the debt owed at the time of foreclosure, less $2,500, the amount bid by [Lender] at the foreclosure sale, plus pre-judgment interest, [attorneys'] fees, and costs" from the proceeds available in this case. The master further determined the Foremost policy provided primary coverage while the American Security policy provided secondary or excess coverage only, and the insurance proceeds from Blanding's Foremost policy should be the first applied to the sums secured by the mortgage agreement. He found Lender entitled to $49,495.14 on Blanding's debt due, plus $6,736.48 in prejudgment interest and $6,768.38 in attorneys' fees. Accordingly, the Master ordered Lender was entitled to the full amount of the $63,000 in available insurance proceeds. Blanding then filed a motion for reconsideration and to alter or amend judgment pursuant to Rule 59 of the South Carolina Rules of Civil Procedure which, with the

exception of the deletion of one sentence from the order, was denied. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is proper where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Hurst v. E. Coast Hockey League, Inc.*, 371 S.C. 33, 36, 637 S.E.2d 560, 561 (2006). On appeal from a grant of summary judgment, the appellate court applies the same standard governing the trial court. *Id.* at 35, 637 S.E.2d at 561. The trial court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 217, 578 S.E.2d 329, 334 (2003). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). "A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006).

## LAW/ANALYSIS

### I. Master's Refusal to Apply American Security Proceeds

Blanding first contends the master erred in failing to apply the insurance proceeds paid by American Security to reduce her outstanding debt. She argues that the American Security payment of $22,403.91 was paid in settlement of the fire and, under the terms of the mortgage agreement, these sums must therefore be applied to her debt. Specifically, she points to the language of the agreement that "any insurance proceeds, ... shall be applied to restoration or repair," and if "restoration or repair is not economically feasible ..., the insurance

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower." Blanding asserts this language requires Lender to apply the proceeds of the American Security policy to her debt, and that she is then entitled to any excess proceeds after application of both the American Security and Foremost policy proceeds.

In making this argument, Blanding does not dispute that the sums originally paid by American Security were returned by Lender after discovery of the Foremost coverage. However, she contends the return of those funds did not "expunge the payment of those proceeds" nor alter the requirement that these proceeds be applied to her mortgage debt. Blanding makes several arguments as to why the returned funds must be included in the payment of insurance proceeds under the mortgage agreement.

## A. "Other Insurance" Clauses

■ Blanding argues the Master's determination of which policy pays first is irrelevant, as both insurers have already paid. She asserts the "other insurance" clauses, used by the Master to determine which policy was primary, do not apply because this is not a contribution action between insurers, but a dispute between insureds over proceeds that have already been paid. Accordingly she maintains the Master erroneously relied on the "other insurance" clauses in the two policies in refusing to apply the American Security proceeds. We disagree.

■ "[C]ourts faced with the distasteful chore of apportioning liabilities among multiple insurers should look to the language of the policies to ascertain whether the policies are intended to provide *primary* or *secondary* coverage." *S.C. Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc.*, 327 S.C. 207, 214, 489 S.E.2d 200, 203 (1997) (emphasis in original). "In other words, the relevant question is not whether a policy is blanket or specific, but what is the 'total policy insuring intent' embodied within the policy." *Id.* "One method insurance companies use to indicate whether they intend to provide primary, secondary, or other coverage is to include in their policies 'other insurance' clauses that attempt to apportion

liability among multiple insurers." *Id.* at 215, 489 S.E.2d at 204. "An 'excess' clause, the most common kind of 'other insurance' clause, provides a policy will cover only amounts exceeding the policy limits of other insurance covering the same risk to the same property." *Id.*

■ We find disingenuous Blanding's assertion that the rules concerning determination of policy coverage among more than one policy do not apply because this is an action between insureds, as opposed to insurers. The crux of this litigation is which proceeds are available to be applied to the loss. In the present case, the mortgage agreement provides Blanding is required to maintain property insurance naming Lender "as mortgagee and/or an additional loss payee." In the event of loss, the mortgage further provides: "the insurance proceeds shall be applied to the sums secured by [the mortgage agreement], whether or not then due, with excess, if any, paid to Borrower." Therefore, under the plain and unambiguous terms of the mortgage agreement, any insurance proceeds must be first applied to sums secured by the mortgage agreement, with any excess paid to Blanding. The American Security policy provided that if there were "any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, this insurance shall apply *only as excess* and in no event as contributing insurance and then *only after all other insurance has been exhausted.*" (emphasis added). Here, it is undisputed that the Foremost policy was collectible insurance that would attach had the American Security policy not been effected. Additionally, the Foremost policy was sufficient to cover the loss of the insured property and, thus, the American Security policy, as an excess policy, would provide no proceeds.

## B. Policies' Coverage of the Same Interests for Same Insureds

■ Blanding maintains, however, even if the Master properly considered the "other insurance" clauses to apply in a dispute between insureds, his analysis was still flawed because, in order for the "other insurance" clauses to apply, the policies must cover the same risk and same interest for the benefit of the same insured over the same period of time. She argues the policies cover different interests for the benefit of

different insureds, and therefore the "other insurance" clauses are inapplicable. We disagree.

Our courts have held that " '[o]ther insurance' clauses are intended to apportion an insured loss between or among insurers where two or more policies offer coverage of the same risk and same interest for the benefit of the same insured for the same period." *S.C. Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc.,* 327 S.C. 207, 212, 489 S.E.2d 200, 202 (1997). "These clauses began their lives as an attempt to prevent fraud in the overinsuring of property." *Id.* Further, our courts have held that a mortgagor and mortgagee have separate and distinct interests in the same property which they may insure. *Johnson v. Fid. & Guar. Ins. Co.,* 245 S.C. 205, 209, 140 S.E.2d 153, 155 (1965); *Murdaugh v. Traders & Mechs. Ins. Co.,* 218 S.C. 299, 307–308, 62 S.E.2d 723, 726–27 (1950).

While we agree with Blanding that she and Lender had separate and distinct interests in the property for insurance purposes, we disagree that, as a result, the two policies in question fail to cover the same interests for the benefit of the same insureds. Although the parties have separate insurable interests, it is possible for both to have contracted to insure the same insurable interest. *Thomas v. Penn Mut. Fire Ins. Co.,* 244 S.C. 581, 585, 137 S.E.2d 856, 858 (1964). The policy issued by Foremost provided for $63,000 worth of coverage on Blanding's dwelling at her Pineville address, naming Blanding as the insured but also denoting Washington Mutual as the lienholder, as required by the mortgage agreement which states Blanding "shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire" and that "[a]ll insurance policies required by Lender and renewals of such policies ... shall name Lender as mortgagee and/or as an additional loss payee." Accordingly, the Foremost policy, while insuring Blanding's interest in the property, likewise insured Lender's interest in the property. The American Security policy provided the named insured mortgagee was Washington Mutual Bank, and named Blanding as the additional insured. It likewise insured the property at Blanding's Pineville address stating, "it is agreed that the insurance applies to the property described above and to any person shown as an Additional Insured with respect to such

property . . . ." It further noted "[l]oss, if any, shall be adjusted with and payable to the above Named Insured Mortgagee, and the Additional Insureds as their interests may appear . . . ." Thus, the American Security policy insured the same property, during the same period, against the same risk for the benefit of the same insureds. Both policies were intended to provide coverage for the mortgaged property that was security for the debt. Thus, the two policies, while insuring the parties' separate and distinct interests, each insured the same interest of the mortgagor and the same interest of the mortgagee. In other words, while Blanding and Lender may have separate and distinct interests insured by the policies, both policies insured both parties' interests. Accordingly, we find the two policies contracted to insure the same insurable interest, and there is no merit to Blanding's assertion that the "other insurance" clause in the American Security policy is inapplicable on this basis.

## C. "Other Insurance" Clause Conflict with Statutory Law

Finally Blanding claims, even if the policies did cover the same risks, interests, and insureds during the same period of time, the "other insurance" clause in the American Security policy conflicts with statutory law and is therefore invalid. Specifically, Blanding points to sections 38–75–20 and 38–75–220 of the South Carolina Code of Laws in support of this argument. Section 38–75–20 provides in pertinent part:

No insurer doing business in this State may issue a fire insurance policy for more than the value stated in the policy or the value of the property to be insured . . . . If two or more policies are written upon the same property, they are considered to be contributive insurance, and, if the aggregate sum of all such insurance exceeds the insurable value of the property, as agreed by the insurer and the insured, each insurer, in the event of a total or partial loss, is liable for its pro rata share of insurance.

S.C.Code Ann. § 38–75–20 (2002). Section 38–75–220 provides in part:

No insurer transacting a mobile home insurance business in this State and writing hazard insurance covering loss from physical damage to the mobile homes may issue a policy for

more than the value stated in the policy or the value of the property to be insured. . . . If two or more such policies are written upon the same property and covering the same interests, they are considered to be contributive insurance, and, if the aggregate sum of all such insurance exceeds the insurable value of the property, as agreed by the insured and insurer, each insurer, in the event of a total or partial loss, is liable for its pro rata share of insurance.

S.C.Code Ann. § 38–75–220 (2002).

Blanding argues, to the extent the two policies in question cover the same interests, the "other insurance" clause in the American Security policy is invalid because it conflicts with sections 38–75–20 and 38–75–220 of the South Carolina Code. She argues under these sections such policies are deemed to be concurrent and contributive as a matter of law, and as such, each insurer is primarily liable for its pro rata share of the loss to the extent the aggregate sum of insurance exceeds the insurable value of the property. Again, we disagree.

■ "[I]f policies insure the same entity and interest against the same casualty, then the coverage provided by the policies is concurrent, thus requiring pro rata contribution *absent a contrary provision in an 'other insurance' clause* contained in one of the policies." *S.C. Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc.,* 327 S.C. 207, 214, 489 S.E.2d 200, 203 (1997) (emphasis added). Here, the American Security policy contains an "other insurance" clause that provides "[i]f there is any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted." Thus, the policy language clearly provides to the contrary and the coverage provided by the policy is not "concurrent and contributive as a matter of law."

## II. Award of Attorneys' Fees

■ Blanding raises as her next issue the propriety of the award of attorneys' fees.[4] The Master determined attorneys'

4. In the present case, the master awarded Lender attorneys' fees in the amount of $6,768.38, which is the amount of proceeds remaining after

fees were warranted under the terms of the mortgage agreement, which provided such fees became the additional debt of Blanding. Here, the mortgage agreement contains broad language regarding Lenders' rights to recover attorneys' fees:

> **Protection of Lender's Interest in the Property and Rights Under this Security Agreement.** If ... there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations) ... then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument.... Lender's actions can include, but are not limited to ... (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument.
>
> Any amount disbursed by Lender under this [section] shall become additional debt of Borrower secured by this Security Instrument.

Blanding maintains, however, attorneys' fees are not recoverable under the terms of the mortgage because Lender's rights under the mortgage were extinguished when the foreclosure judgment was entered. We disagree.

Blanding cites section 29–3–780 of the Code for the proposition that once Lender foreclosed the mortgage and the property was sold, Lender's lien against the property was released, cancelled, and satisfied. This section provides that "[u]pon confirmation of the circuit court of the report of the master ... pursuant to decree of foreclosure, the officer of the court making the sale shall cause to be recorded in the office where the foreclosed mortgage is recorded a release, cancellation, and satisfaction of the lien...." S.C.Code Ann. § 29–3–780 (2007). This section further provides, "However, nothing in this section may be construed to satisfy any unpaid portion of the debt secured by the mortgage." *Id.* Thus, while the

---

the debt ($49,495.14) and prejudgment interest ($6,736.48) were satisfied. The amount of attorneys' fees, which is only a small portion of the $39,335.50 Lender asserted it incurred, is not in dispute.

mortgage may well have been deemed "released, cancelled, and satisfied" under this section, the sale is not construed to satisfy any unpaid portion of the debt secured by the mortgage agreement. By the clear terms of the agreement, the attorneys' fees incurred by Lender in pursuing the insurance proceeds became the additional debt of Blanding secured by the mortgage agreement and were thus unpaid debt secured by the mortgage agreement that remained unsatisfied under section 29–3–780.

Blanding further cites *Ryan v. S. Mut. Bldg. & Loan Ass'n*, 50 S.C. 185, 27 S.E. 618 (1897) for the proposition that the mortgage agreement merged into the foreclosure judgment such that the contract was extinguished, and therefore the attorneys' fee provision was no longer viable. However, *Ryan* involved a suit for double the sum of interest collected by the defendant alleged to be received in excess of lawful interest, challenging the collection of the money as usurious, instituted subsequent to receipt of the proceeds in a foreclosure judgment and sale. *Id.* at 186, 27 S.E. at 618–19. There, the court determined the contract said to be usurious had become merged into the judgment of foreclosure, extinguishing the original contract. *Id.* at 190, 27 S.E. at 619. The court further noted "[t]he judgment became a new debt," and was not "infected by the usurious nature of the cause of action." *Id.* In so ruling, the court was guided by the law that "[a] judgment is the final determination of the rights of the parties in an action . . . and is conclusive of all matter necessarily involved, whether raised or not; especially if the party denying the adjudication knew of the matter, and could have interposed it at the previous trial, either in support of a claim or as a defense." *Id.* at 188, 27 S.E. at 619. In the case at hand, Lender could not have raised the issue of attorneys' fees incurred in the collection of the insurance proceeds, as no insurance issues were implicated at that time since the property had not yet been destroyed by fire. Thus, this matter could not have been raised at the foreclosure proceeding and we do not believe the mortgage agreement was completely merged into the foreclosure such as to extinguish the broad conveyance of rights to collect attorneys' fees in "a legal proceeding that might significantly affect Lender's interest in the Proper-

ty and/or rights under" the mortgage agreement. Accordingly, we find no error in the award of attorneys' fees.

### III. Award of Prejudgment Interest

■ Lastly, Blanding contends the Master erred in awarding prejudgment interest to Lender, running from the date of issuance of the Foremost check to Blanding until the date of the summary judgment hearing. We disagree.

■ Blanding asserts the $49,495.14 awarded to Lender from the insurance proceeds does not constitute damages and this is, therefore, not a liquidated damages case with a stated account. She further maintains she never had possession or control of the proceeds and, accordingly, could not have paid the proceeds to Lender. "The law has long allowed prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, the payment is demandable, if the sum is certain or capable of being reduced to certainty." *Butler Contracting, Inc. v. Court St., LLC*, 369 S.C. 121, 133, 631 S.E.2d 252, 258 (2006). Thus, "the proper test for determining whether prejudgment interest may be awarded is whether the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose." *Id.* at 133, 631 S.E.2d at 259. Consequently, "[t]he right of a party to prejudgment interest is not affected by rights of discount or offset claimed by the opposing party." *Id.* at 133–34, 631 S.E.2d at 259. Rather, "[i]t is the character of the claim and not the defense to it that determines whether prejudgment interest is allowable." *Id.* at 134, 631 S.E.2d at 259.

Here, Blanding's indebtedness was certain throughout litigation. The measure of recovery was fixed by conditions existing at the time the proceeds were issued. Accordingly, Blanding was obligated to pay the insurance proceeds when she received them in May 2005. We further find no merit to Blanding's assertion she had no control over the proceeds because the check was made out to her along with Lender. She merely had to endorse the check along with Lender to have the proceeds applied to her debt.

■ Blanding also argues Lender is entitled to no more than $49,495.14 from the available insurance proceeds as that

is the extent of Lender's interest in the property at the time of the fire. Thus, she maintains, by awarding prejudgment interest, the Master effectively allowed Lenders to recover a deficiency judgment. However, the award of prejudgment interest did not alter or add to the Lender's interest in the property. As noted by the master, "[t]he foreclosure judgment fixed the amount of [Blanding's] debt and was a final adjudication thereof. The award of prejudgment interest does not alter the foreclosure judgment. The interest is being awarded on top of the amount due and owing, not in alteration of that amount."

 Blanding next contends if Lenders are entitled to prejudgment interest on their interest in the proceeds, she is likewise entitled to prejudgment interest on the remaining insurance proceeds that she was due after payment of her debt. We disagree. In her complaint, Blanding sought application of available insurance proceeds. Lenders admitted the Foremost Insurance proceeds were to be applied to Blanding's debt, but denied that they refused to apply any other available insurance proceeds, i.e. those form the American Security policy. As previously found, the Foremost policy was sufficient to cover the loss of the insured property and, thus, the American Security policy, as an excess policy, provided no proceeds for the loss. Had Blanding relinquished the sum certain due Lenders at the time the proceeds were issued to her, she would have received the excess proceeds from the Foremost policy at that time. It is clear Lenders sought only their share of the proceeds from the Foremost policy when this action was instituted by Blanding. Because Lenders did not deny Blanding her interest in the excess, we find no merit to her assertion she is entitled to prejudgment interest.

Blanding also contends the original foreclosure judgment included $7,517 in prejudgment interest on her debt and that by including prejudgment interest on this same debt, the Master's award amounted to a double recovery of prejudgment interest. Blanding fails to recognize, however, that this is a separate proceeding seeking insurance proceeds that were due to Lender. The prejudgment interest awarded by the Master here does not reflect that amount due in prejudgment interest from the mortgage foreclosure, but from the interest accrued from the time the insurance proceeds from the fire

were made available by the Foremost check to Blanding, but were not paid to Lender as due.

Finally, Blanding argues, because the parties deposited the proceeds into the Clerk's Office by consent, she is relieved of any liability for prejudgment interest. She further asserts in a footnote that should Lender be entitled to an award of prejudgment interest, she should be allowed to offset the interest earned on the funds while on deposit with the Clerk.

In reviewing the record before us, it does not appear either of these arguments was raised to the Master in the summary judgment arguments. In her motion for reconsideration pursuant to Rule 59, SCRCP, Blanding stated only, "To the extent that any prejudgment interest is awarded to [Lender], [Blanding] is entitled to offset against any such award the interest earned while the funds were on deposit with the Clerk." In the hearing on her motion for reconsideration, Blanding questioned how the court intended "to treat the interest paid on the proceeds since their deposit with the court," stating that the Clerk pays interest on the funds deposited at around 4.5 percent. The Master indicated he was "not aware of that," did not know if that was correct, and stated the matter was not before him. He concluded, "I do not know anything about any interest that the Clerk of Court has been awarding on this money and I am not going to do that." Accordingly, it appears Blanding's argument that she had *no liability* based upon the deposit of the funds with the Clerk was never raised to the Master and therefore is not properly preserved on appeal. *See Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review."). As to the offset argument, this contention was first raised in Blanding's motion for reconsideration and therefore is not preserved for review. *See Dixon v. Dixon*, 362 S.C. 388, 399, 608 S.E.2d 849, 854 (2005) (holding that an issue first raised in a Rule 59, SCRCP, motion is not preserved for appellate review).[5]

---

5. We would note that the Master found Lender entitled to a total judgment of $63,000 from the insurance proceeds, inclusive of prejudg-

Based upon the foregoing, the decision of the Master is **AFFIRMED.**

ANDERSON and KITTREDGE, JJ., concur.

---

ment interest. Lender will receive this specific amount, and thus Blanding should ultimately receive any remaining accrued interest on the $63,000 deposited with the Clerk.